WILLIE WADSWORTH, SR., & others[1] *vs.* BOSTON GAS
COMPANY
(and a companion case[2]).

Suffolk.   November 10, 1966. — February 16, 1967.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Negligence,* Gas appliance. *Practice, Civil,* Amendment, Parties, Order-
ing verdict, Requests, rulings and instructions. *Evidence,* Hospital
record, Death record. *Damages,* For tort, Mitigation.

[1] Willie Wadsworth, Jr., Cheryl Wadsworth and Lorraine Wadsworth, minor
children of Willie Wadsworth, Sr. All the plaintiffs seek damages for per-
sonal injuries, and Wadsworth, Sr., also seeks consequential damages.

[2] Edna Love, administratrix, *vs.* Boston Gas Company. The action is for
the conscious suffering and death of Lillian Wadsworth, wife of Wads-
worth, Sr.

In an action seasonably brought, the court had power to allow a motion to add another defendant, although at the time the motion was made an original action against the added defendant for the same cause of action would have been barred by the statute of limitations.   [88–89]

In actions brought against a landlord for personal injuries and death of occupants of an apartment caused by inhalation of illuminating gas emanating from a hot water heater in the apartment, where it could be found that in each case the plaintiff intended to bring the action against the person liable for the injury, the court properly allowed motions to add as a party defendant the gas company which serviced the heater. [89]

Evidence warranted a finding of negligence on the part of a gas company which serviced a stack hot water heater in an apartment toward occupants thereof rendering the company liable for their personal injuries and death caused by inhalation of illuminating gas emanating from the heater, either on the ground that upon being notified of the odor of gas in the apartment the company undertook to locate and fix the cause thereof but the repairs it made did not do so, or on the ground that upon again being notified of the odor of gas in the apartment some months later it checked the equipment and failed to carry out its duty under its own regulations to warn the occupants that the heater was unsafe for operation.   [92]

An exception in an action to the denial of a motion by the defendant for a directed verdict not specifically based on the pleadings will not be sustained if the evidence is sufficient in any form of pleading to justify a finding for the plaintiff.   [92]

At the trial of actions against a gas company for personal injuries and death caused by inhalation of gas from a hot water heater serviced by the defendant, the jury under G. L. c. 233, § 79, and c. 46, § 19, were properly allowed to consider the words "illuminating gas" appearing in certain hospital records and a death certificate as relating to the patients' medical histories or treatment or injuries of the decedent, even though incidentally the words might have had some bearing on the question of liability.   [92–93]

At the trial of an action, there was no error in the judge's denial of requests for instructions which were adequately covered by the charge, or were for findings of disputable facts, or were based on assumptions of disputable facts, or were as to the legal effect of fragments of the evidence, or were too general or ambiguous.   [93–94]

Where an action for personal injuries was brought against two joint tort-feasors and was settled during trial as against one of them and the jury were instructed that in computing any award against the remaining defendant they should deduct compensation already received by the plaintiff in the settlement, an instruction was not required that if the jury found that the compensation already received was adequate then they must find for the remaining defendant; upon the return of a verdict for the plaintiff with no damages, the court could order the return of a verdict for the remaining defendant.   [94]

Two ACTIONS OF TORT. Writs in the Superior Court dated October 2, 1958.

Motions to amend by adding Boston Gas Company as a defendant were allowed by *Lurie,* J. Motions to dismiss by Boston Gas Company based on impropriety of the allowance of the motions to amend were denied by *Gourdin,* J. Trial on the merits was before *Chmielinski,* J.

*Edward N. Gadsby, Jr. (Paul J. Dolan* with him) for the defendant.

*Morris Michelson* for the plaintiffs.

KIRK, J. The cases, sounding in tort for negligence, are before us on the consolidated bill of exceptions of the defendant Boston Gas Company (Boston Gas).[3] The questions presented are whether there was error in (1) allowing motions to add Boston Gas as a defendant in the actions at a time when original actions against Boston Gas would have been barred by the statute of limitations; (2) denying Boston Gas's motions for directed verdicts and for entry of verdicts under leave reserved; (3) rulings on evidence; and (4) the charge to the jury and denial of requests for instructions.

1. There was no error as matter of law in allowing the motions to add Boston Gas as a party defendant at a time when original actions against Boston Gas would have been barred by the statute of limitations (G. L. c. 229, § 2C, inserted by St. 1949, c. 427. § 3). It has often been said that the running of the statute of limitations is not a reason for denying an amendment, and may furnish a reason for allowing it. *Johnson* v. *Carroll,* 272 Mass. 134, 138. *Peterson* v. *Cadogan,* 313 Mass. 133, 134, and cases cited. In general, the law in this Commonwealth with respect to amendments is more liberal than elsewhere, and cases from other jurisdictions are not in point. *Neszery* v. *Beard,* 226 Mass. 332, 334. See *Ideal Financing Assn. Inc.* v. *McPhail,* 320 Mass. 521, 523.

---

[3] The actions were originally brought against the Wadsworths' landlords. As against them the actions were settled during trial.

There is ample authority for the proposition that where an action has been commenced before the statute of limitations has run, a plaintiff may be allowed to substitute one defendant for another after the statute of limitations has run against the proposed substitute defendant. *McLaughlin* v. *West End St. Ry.* 186 Mass. 150, 151. *Genga* v. *Director Gen. of Railroads,* 243 Mass. 101, 104, and cases cited. After the amendment has been allowed and the defendant brought into court by due process, the substitution relates back to the date of the writ and makes the substituted defendant a party from that date. *Johnson* v. *Carroll,* 272 Mass. 134, 137. We discern no difference in principle between permitting a plaintiff to substitute a defendant and permitting a plaintiff to add a defendant. See *Cohen* v. *Levy,* 221 Mass. 336, 337; *MacPherson* v. *Boston Edison Co.* 336 Mass. 94, 97. The effect in both cases is that a different defendant is called upon to defend the action. We hold, therefore, that the propriety of allowing the amendment in both cases is governed by the same rules.

Our inquiry on review, then, is limited to whether, as matter of law, the allowance of the amendments resulted in the introduction of new causes of action against the added defendant. G. L. c. 231, § 138. *Bowen* v. *Fairfield,* 260 Mass. 38, 41. The facts upon which the judge relied in allowing the amendments are not set out in the record. It could be found, however, that in each of the present cases "[t]he cause of action for which the suit was brought was the injury, and the plaintiff intended to bring it against the party liable for the injury." *McLaughlin* v. *West End St. Ry.* 186 Mass. 150. *Shapiro* v. *McCarthy,* 279 Mass. 425, 430–431. We are therefore unable to say as matter of law that the effect of the amendment in either case was to allow maintenance of an action for a cause not intended when the action was brought. It follows that the allowance of the amendments is final. *Ames* v. *Beal,* 284 Mass. 56, 61–62. *Bucholz* v. *Green Bros. Co.* 290 Mass. 350, 354.

2. There was no error in the denial of the defendant's motions for directed verdicts and for entry of verdicts un-

der leave reserved.   In considering both, we apply the rules stated in *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719, and *Brightman* v. *Blanchette,* 307 Mass. 584, 589.

The evidence most favorable to the plaintiffs showed that the Wadsworths moved into a five-room apartment at 164 Howard Avenue, Dorchester, in May, 1957.   Shortly thereafter Boston Gas was notified and the gas to the apartment was turned on.   The regulations of Boston Gas require that employees leave appliances in a safe operating condition. If an appliance was found not to be in a safe operating condition, the appliance was to be shut off and tagged with a warning notice.   Five months after the gas was turned on a leak developed in the pipe carrying hot water from the stack burner to the hot water storage tank.   The landlord was notified and a man was sent to repair the leak.   In making the repairs, a one-half inch pipe was substituted for the original three-quarters inch pipe and the original screw-in elbow joint joining the pipes was replaced with a joint which was held in place by solder only.   Until the date of the accident no leak was apparent in the new pipe.

After these repairs were made Mrs. Wadsworth smelled gas when the stack heater was being operated.   Wadsworth also smelled gas and thought there was some defect in the heater.   He told his wife to call the gas company.   One week later (six weeks before the accident) Mrs. Wadsworth informed her husband that the gas company had checked the equipment.   Nevertheless, Wadsworth continued to smell gas while the heater was being operated.   There was no odor of gas when the heater was turned off.

The gas burner in the stack heater was manually operated.   Water entering the stack heater flowed through coils which were heated by the flame from the gas burner.   The heated water passed out of the heater and through the new pipes, first vertically, then through the new soldered joint, and then horizontally through another piece of new pipe, finally entering a 30-gallon hot water storage tank.

On the night of the accident, the Wadsworths had supper in the kitchen at 7 P.M.   Mrs. Wadsworth lighted the stack

heater to wash dishes. The children went to bed. Sometime later, Mrs. Wadsworth relighted the heater preparatory to using the washing machine. Wadsworth was in the living room watching television. At 8:30 P.M., he went into the kitchen to get a glass of water. He noticed nothing unusual except that the smell of gas was less strong than in previous months. He saw no steam and the only noise he heard was the sound of the washing machine. He returned to the living room and continued to watch television. The kitchen door was open. The last he remembered before waking up in the Boston City Hospital was that he began to feel nauseous and went to the bathroom.

At six fifteen the next morning, another tenant, upon finding the basement of the building flooded, went to the Wadsworth apartment where he heard the sound of water and smelled gas. He saw Mrs. Wadsworth in pajamas and a bathrobe lying on the floor. When the police arrived they found Wadsworth and the three children unconscious and Mrs. Wadsworth apparently dead. Inspection of the hot water heater disclosed that the vertical pipe leading from the heater to the new soldered joint had given way, permitting water to flow down the sides of the pipe. The water had extinguished the flame in the gas burner and the burner had continued to emit illuminating gas.

There was evidence that the water going through the coils in the stack heater was heated to a temperature which was sufficient to cause the solder in the new joint to become mastic and begin to flow. Part of this temperature rise was attributable to the change in pipe size. The smaller pipe caused the water to flow more slowly through the coils in the heater and to be subject to more heat from the burner. If there had been proper temperature and pressure valves installed in the system, the temperature and pressure would have been reduced before reaching temperatures high enough to make the solder mastic. Because the stack heater was not properly supported, the downward strain on the vertical pipe pulled the pipe out of the soldered joint. The cause of the odor of gas prior to the date

of the accident was due to an improper adjustment of the burner, and one of the results of an improper adjustment is the escape of carbon monoxide. The amount of carbon monoxide in the gas composition was 2.2% on the date the gas to the apartment was turned on, and 7.4% on the date of the accident. If the burner were properly adjusted, there would be no odor of gas. All gas would be completely burned.

This evidence, if believed, would warrant a finding for the plaintiffs on either of two grounds: First, that Boston Gas undertook to locate and fix the cause of the odor of gas emanating from the stack heater and it failed to do so; or second, that under its own regulations, there was a duty to warn the Wadsworths that the stack heater was unsafe for operation due to (a) the absence of proper safety valves, (b) the lack of proper support for the stack heater, or (c) the use of improper pipe. The defendant's motions for directed verdicts and for the entry of verdicts under leave reserved were not specifically based on the pleadings. It is settled that an exception to denial of such a motion will not be sustained if the evidence was sufficient in any form of pleading to justify a finding for the plaintiff. *Snow* v. *Metropolitan Transit Authy.* 323 Mass. 21, 24. *Murphy* v. *Brilliant Co.* 323 Mass. 526, 530. *Leigh* v. *Rule*, 331 Mass. 664, 667–668. The motions, therefore, were properly denied.

3. There was no error in the trial judge's rulings on evidence. The defendant contends that the jury should not have been allowed to consider the words "illuminating gas" appearing in certain hospital records and in Mrs. Wadsworth's death certificate. Under G. L. c. 233, § 79, as amended, hospital records "shall be admissible . . . so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability." A practical construction of the statute requires that "a record which relates directly and mainly to the treatment and medical history of the patient, should be admitted, even though incidentally the facts recorded may

have some bearing on the question of liability." *Cowan* v. *McDonnell*, 330 Mass. 148, 149, quoting *Leonard* v. *Boston Elev. Ry.* 234 Mass. 480, 482–483. A similar rule of construction governs the admissibility of entries in death certificates (G. L. c. 46, § 19). Where the words have reference to the injuries of the deceased, they are admissible, even though incidentally they may have some bearing on the question of liability. *Trump* v. *Burdick*, 322 Mass. 253.

The recital of injury or death from inhalation of illuminating gas, standing alone, does not impute fault or freedom from fault to anyone. It may designate the chemical agent which produced the physical result, but it does not narrate the event or chain of events which caused the illuminating gas to escape. There was no showing in the present cases that the words "illuminating gas" did not relate to the Wadsworths' medical histories or treatment, or to the death of the deceased. We are unable to say, as matter of law, that the words are not so related. The entries were, therefore, admissible. *Leonard* v. *Boston Elev. Ry.* 234 Mass. 480. *Cowan* v. *McDonnell*, 330 Mass. 148. Once admitted, the facts shown by the entries could be considered by the jury on any relevant issue. *Bilodeau* v. *Fitchburg & Leominster St. Ry.* 236 Mass. 526, 540. *Clark* v. *Beacon Oil Co.* 271 Mass. 27, 30–31. *Burke* v. *John Hancock Mut. Life Ins. Co.* 290 Mass. 299, 304–305.

4. There was no error in the charge to the jury. On the record we consider the defendant's requests numbered 2–4, 8, 10–13, 19, 23–29, and 32 waived. Requests numbered 17 and 30 were adequately covered by the charge. Requests numbered 9, 14, 15, and 20–22[4] were properly denied. They were requests for findings of fact which the judge properly left to the jury or were based on assumptions of fact which the jury were not required to find on the evidence, *R. Dunkel, Inc.* v. *V. Barletta Co.* 302 Mass. 7, 11–12,

---

[4] The defendant requested the judge to instruct the jury in substance: that the plaintiffs had not shown that any odor from the stack heater was related to the accident (9); that the plaintiffs had not shown what caused their injuries other than carbon monoxide (20); that excessive use of the stack heater would cause carbon monoxide (21); and that, if the injuries were so caused, the defendant is not liable (14, 15, 22).

*McGillivray* v. *Eramian,* 309 Mass. 430, 432, or were requests for instructions as to the legal effect of fragments of the evidence. *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 657.

Requests numbered 5, 6, 16 and 18 [5] were properly denied. The question for the jury was whether Boston Gas had any duty with respect to the water pipe which was connected to and leading from the heater. The requests were not directed to this pipe. They were too general and the granting of them could only divert the jury's attention from the narrow question presented.

Request numbered 7 relating to the meaning of the term "appliances" appearing in Boston Gas's regulations was properly denied because on its face it was ambiguous. The instructions given by the judge were more favorable to Boston Gas than the evidence required and it has no cause to complain.

The judge properly instructed the jury that payments made by the Wadsworths' landlords in settlement of the plaintiffs' claims against them could not be construed as an admission of liability as against Boston Gas. The judge instructed the jury that in computing any award for a plaintiff in the action by the Wadsworths they should deduct compensation already received by that plaintiff from the landlords. The judge was not required to instruct the jury that if they found that the amount paid by the landlords was adequate compensation, then they must find for the defendant as to that plaintiff (request 31). If the jury had returned a verdict for that plaintiff with no damages, the judge by inquiry, having ascertained that the jury found that that plaintiff had been fully compensated or had suffered no damages, could order the jury to return a verdict for the defendant as to him or her. *Daniels* v. *Celeste,* 303 Mass. 148, 152.

*Exceptions overruled.*

---

[5] The requests were for instructions that Boston Gas is not in the plumbing business (16); is not responsible for checking water lines of the apartment (5), or making sure that a relief valve was on the water line (6) or system (18).