**Robert COVEL, Plaintiff,**

v.

**SAFETECH, INC., et al., Defendants.**

**Civ. A. No. 75–2196–K.**

United States District Court,
D. Massachusetts.

June 9, 1981.

**428**

Mark S. Knoll, Boston, Mass., Cargill & Mastermann, Thomas E. Cargill, Jr., Boston, Mass., for Covel.

Robert Bramley, Boston, Mass., for Wilshire Foam Products.

John J. Gilfoyle, Boston, Mass., James F. Meehan, Parker, Coulter, Daley & White, Boston, Mass., for Safetech.

Arthur Licata, Boston, Mass., Neil Jacobs, Hale & Dorr, Boston, Mass., for Uniroyal.

Eugene Nowell, Robert Curley, Curley & Curley, Boston, Mass., for American Sports Co.

### Memorandum and Order

KEETON, District Judge.

This matter, a diversity action for negligence and breach of warranty against the manufacturers of a motorcycle helmet worn by the plaintiff when injured in a motorcycle accident, is before the court on defendant Uniroyal, Inc.'s Motion to Vacate Allowance of Motion to File Amended Complaint. The accident in which plaintiff was injured occurred on July 29, 1973. As a result of injuries suffered in that accident, plaintiff is a quadriplegic.

### I.

Plaintiff commenced this action against the manufacturer of the helmet, Safetech, Inc., on June 4, 1975. Between 1976 and the end of 1979 discovery proceeded fitfully, and in the interim Safetech went out of business. In March 1976 plaintiff took the deposition of a former Safetech quality control manager, Richard Lenarth, who was produced pursuant to an order of the court. After considerable delays, plaintiff subsequently obtained answers to interrogatories and production of requested documents, in 1978 and 1979, respectively. Plaintiff then took the deposition of Safetech's president, Fred Plotkin. Shortly after Plotkin's deposition, on January 23, 1980, plaintiff moved to file an amended complaint adding as defendants Uniroyal and two other firms (American Sports Company, Inc. and Wilshire Foam Products, Inc.). Plaintiff's motion to amend was based on "newly discovered evidence" first disclosed at the Plotkin deposition concerning "the crucial role of the proposed new defendants" in the design and selection of materials used in plaintiff's helmet.[1] The motion was allowed on February 7, 1980, no opposition having been filed. On July 7, 1980, Uniroyal filed its motion to vacate allowance of plaintiff's amendment. A hearing on Uniroyal's motion was held before the court on December 22, 1980. Both plaintiff and Uniroyal have filed affidavits and appendices of exhibits in support of their motions.

Uniroyal presents essentially two arguments in support of its motion to vacate. First, Uniroyal argues that as a matter of law plaintiff's claims against Uniroyal were barred by the then-applicable two-year statutes of limitation[2] as of July 29, 1975, and pursuant to Fed.R.Civ.P. 15(c) fail to "re-

---

1. Uniroyal sold to Safetech a closed-cell foam material, known as "Ensolite," used as the shock-absorbing padding in the type of Safetech helmet worn by plaintiff when injured. Plaintiff claims, *inter alia*, that the helmet was negligently designed and manufactured because the Ensolite used was of insufficient thickness and density to prevent spinal injuries of the kind suffered by plaintiff.

2. The applicable statutes of limitation are Mass.Gen.Laws c. 260 § 2A (tort actions and

contract actions for personal injuries) and c. 106 § 2–318 (warranty claims against manufacturer), both of which specified two years at the time of plaintiff's 1973 accident, and have been subsequently amended to provide a three year limitation period. The question whether Mass. R.Civ.P. 15(c), which has replaced Mass.Gen. Laws c. 231 § 51, is to be treated as a part of the Massachusetts law of limitation of actions is at issue in this case.

late back" to the date the original action was filed. Second, Uniroyal argues that the court should reconsider its allowance of the amendment adding Uniroyal, and in the exercise of discretion (pursuant to Fed.R. Civ.P. 15(a)) now deny the amendment on grounds of inexcusable delay by plaintiff in adding Uniroyal and undue prejudice to Uniroyal as a result of the lack of timely notice of the action. Plaintiff contends that through no fault of his own "he had, until Plotkin's deposition, no knowledge and no way of knowing Uniroyal, Inc.'s role in the selection of the composition and thickness of the padding," and that the delay in obtaining Plotkin's deposition was entirely the fault of Safetech. Pltf. Mem. at 10. Plaintiff further contends that its claims against Uniroyal are governed by Massachusetts law, not the federal rule, and that under Mass.R.Civ.P. 15(c) his amendment relates back. For reasons stated below, I sustain plaintiff's position and deny Uniroyal's motion to vacate.

## II.

### A.

Under the two-year state statutes of limitation applicable in this diversity action, Mass.Gen.L. c. 260 § 2A and Mass.Gen.L. c. 106 § 2-318, plaintiff's claims against Uniroyal are barred unless they "relate back" to the date the original complaint was filed. Uniroyal argues that relation-back is to be determined by the standards specified in Fed.R.Civ.P. 15(c), and that by virtue of its lack of timely notice those conditions are not met.

An examination of Massachusetts statutes and case law discloses that Massachusetts has long had an unusually liberal relation-back rule, reflecting a conscious substantive policy choice in favor of allowing plaintiffs to add new transaction-related defendants allegedly liable for the injury that gave rise to the original cause of action, even though as to them the statute of limitation would have run but for relation-back. As the Massachusetts rule is usually articulated, an amendment relates back where "[t]he cause of action for which the suit was brought was the injury, and the plaintiff intended to bring it against the party liable for the injury." *McLaughlin v. West End St. Ry.*, 186 Mass. 150, 71 N.E. 317 (1904). *See, e.g., Wadsworth v. Boston Gas Co.*, 352 Mass. 86, 89, 223 N.E.2d 807, 809-10 (1967); *Johnson v. Carroll*, 272 Mass. 134, 138, 172 N.E. 85 (1930). Thus, the Massachusetts relation-back rule is a firm declaration of substantive policy, in contrast to a rule merely regulating "procedure" in the *Erie*[3]-related sense. This relation-back rule is an "integral part" of Massachusetts limitation doctrine, in the nature of a tolling provision for certain types of claims. *Cf. Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533-34, 69 S.Ct. 1233, 1234-35, 93 L.Ed. 1520 (1949). It therefore "must be considered part and parcel of the statute of limitations," *Walker, supra*, 446 U.S. at 752, 100 S.Ct. at 1986. This rule, expressed previously by statute—Mass.Gen.Laws c. 231 § 51 (1959 ed., amended 1973), was recently codified in Mass.R.Civ.P. 15(c), effective July 1, 1974, which provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

Although the remainder of Mass.R.Civ.P. 15 is substantially identical to Fed.R.Civ.P. 15, the Reporters' Notes to Mass.R.Civ.P. 15(c) confirm that "Massachusetts practice is more liberal than Federal Rule 15(c) in allowing amendments adding or substituting party defendants after expiration of the period of limitations," 43A Mass.Gen.L.Ann. at 171. The decision to reaffirm the longstanding Massachusetts rule in what was otherwise substantially a verbatim adoption of the Federal Rules of Civil Procedure manifests a deliberate choice by the Massa-

---

3. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

chusetts Supreme Judicial Court and indicates the strength of the Commonwealth's substantive interest in the matter. *See Walker, supra*, 446 U.S. at 751, 100 S.Ct. at 1985. Indeed, in contrast with the predecessor statute, Mass.Gen.L. c. 231 § 51, which declared that the court "may allow" an amendment adding a transactionally-related defendant to relate back, Mass.R. Civ.P. 15(c) is in form categorical, saying simply that "the amendment (including an amendment changing a party) relates back to the original pleading."[4] The Reporters' Notes to Mass.R.Civ.P. make clear that the Massachusetts rule does not distinguish between adding and substituting a defendant. 43 Mass.Gen.L.Ann. at 171–72. "[T]he propriety of allowing the amendment in both cases is governed by the same rules." *Wadsworth v. Boston Gas Co., supra*, 352 Mass. at 89, 223 N.E.2d at 810.

### B.

*Marshall v. Mulrenin*, 508 F.2d 39 (1st Cir. 1974) held that relation-back is controlled by the Massachusetts rule rather than Fed. R.Civ.P. 15(c) when the claim arises under Massachusetts law. *See Ward v. Hercules, Inc.*, 75 F.R.D. 455 (D.Mass.1977). The court in *Marshall v. Mulrenin* reasoned that under the *Erie* doctrine the relation-back of an amendment (at least under Massachusetts law) is a substantive, rather than purely procedural matter, and that under *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), such a substantive state rule is not superseded by a conflicting Federal Rule of Civil Procedure. 508 F.2d at 44. In so ruling, the court noted and explicitly declined to follow the rulings of other circuits, applying Fed.R.Civ.P. 15(c), in *Simmons v. Fenton*, 480 F.2d 133, 136 (7th Cir. 1973); *Welch v. Louisiana Power & Light Co.*, 466 F.2d 1344, 1345 (5th Cir. 1972); and *Loudenslager v. Teeple*, 466 F.2d 249, 250 (3d Cir. 1972). Other circuits have

subsequently applied Fed.R.Civ.P. 15(c) rather than a conflicting rule of state law. *E.g., Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 612 (4th Cir.), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); *Ingram v. Kumar*, 585 F.2d 566, 570 (2d Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Britt v. Arvanitis*, 590 F.2d 57 (3d Cir. 1978). *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1503 & nn. 58, 68 (1971 & 1981 pocket part).

On its face *Hanna* might appear to compel the conclusion that Fed.R.Civ.P. 15(c), rather than the Massachusetts relation-back rule, must be applied. However, the precise issue before the First Circuit in *Marshall v. Mulrenin, supra*, and now before this court, was not before the Supreme Court in *Hanna* or the courts of other circuits whose opinions conflict in rationale with *Marshall v. Mulrenin*. The precise issue here is whether a state tolling rule long integrated into the statute of limitation, extending the *time* when certain claims may be brought by prescribing *more liberal* relation-back than that prescribed in Fed.R.Civ.P. 15(c), is to be applied in a federal court in a diversity action. In contrast, *Hanna* addressed the question whether in a diversity action "service of process shall be made in the manner prescribed by state law or that set forth in Rule 4(d)(1) of the Federal Rules of Civil Procedure." 380 U.S. at 461, 85 S.Ct. at 1138. Faced with a conflict over the required type of notice (*i.e.*, in-hand delivery rather than delivery to defendant's dwelling, etc.), the Court in *Hanna* held that the federal rule applied. The Court's broad language about the presumptive validity and application of a Federal Rule, 380 U.S. at 470–72, 85 S.Ct. at 1143–44, should be viewed in the context that the Court was resolving a clash between what it determined to be two clearly "procedural" rules.[5]

---

**4.** In determining whether it is appropriate to grant leave to amend, however, a Massachusetts court still has discretion under Mass.R. Civ.P. 15(a), which is identical in relevant part to Fed.R.Civ.P. 15(a).

**5.** At the close of its opinion in *Hanna*, the Court described the Federal Rules of Civil Procedure as "housekeeping rules for federal courts" which may differ from "comparable state rules," and described such rules of procedure as regulating "the forms and mode of

*Hanna* held that "the adoption. of Rule 4(d)(1), designed to control service of process in diversity actions, neither exceeded the congressional mandate embodied in the Rules Enabling Act nor transgressed constitutional bounds, and that the Rule is therefore the standard against which the District Court should have measured the adequacy of the service." 380 U.S. at 463–64, 85 S.Ct. at 1139–40 (footnote omitted). It has been argued that, in view of the stated holding of *Hanna*, the rule of *Erie* is irrelevant to the issue before a court confronted with a clash between a federal rule of civil procedure and state law. The·fact remains, however, that in *Hanna* the Court devoted much of its opinion to the meaning and effect of *Erie*, and the Court explicitly stated that in relation to the *Erie* rule "outcome-determination" analysis is not "to serve as a talisman," 380 U.S. 467, 85 S.Ct. 1141, and is not to be applied "without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws," 380 U.S. 468, 85 S.Ct. 1142 (footnote omitted). *See Feinstein v. Massachu-*

*setts Gen. Hosp.*, 643 F.2d 880, 884 (1st Cir. 1981). If *Erie* applies, analysis of the circumstances of the present case in relation to the twin aims of *Erie* strongly supports application of the more liberal state law of relation-back. The Massachusetts rule would be relevant both to choice of forum and equitable administration of the laws in all cases in which an injured claimant might anticipate possible difficulty in promptly and correctly identifying all of the parties potentially responsible for the injury.[6]

Most[7] but not all[8] of the circuit cases cited as inconsistent with *Marshall v. Mulrenin* involved conflicting federal and state rules concerning the procedural questions of *manner* of service or *form* of notice of the action and did not involve a state rule of relation-back *more* liberal than Fed. R.Civ.P. 15(c). This latter distinction is especially significant in view of the policy arguments offered by commentators explaining *Hanna* and the line of decisions that conflict in rationale with *Marshall v. Mulrenin*. In arguing that Fed.R.Civ.P. 15(c) should displace a conflicting state relation-back rule, commentators emphasize the

enforcing [a state-created] right." 380 U.S. at 473, 85 S.Ct. at 1145.

6. For example, if the federal relation-back rule applied in such diversity actions in federal court, plaintiffs would naturally prefer to litigate their claims in Massachusetts state courts. If citizenship of the parties was such that late-joined defendants could remove, they would prefer to do so in order to reap the benefit of the more restrictive federal relation-back rule. Thus, a plaintiff's ability to litigate claims against late-joined defendants would depend on the fortuity of citizenship.

7. *See Davis v. Piper Aircraft Corp.*, 615 F.2d at 610–12 (Fed.R.Civ.P. 15(c) applied to allow amendment that contrary state rule would "categorically prohibit," relying on *Hanna*, and in alternative, on *Erie* policies); *Ingram v. Kumar*, 585 F.2d at 570 n.5 (Fed.R.Civ.P. applies "notwithstanding a possibly more restrictive state practice," in light of strong federal policy interests, minimal impairment of state interests, and no encouragement of forum shopping); *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1249 (5th Cir. 1976) (assuming, citing *Welch*, that federal rule applies, but noting that the choice "makes no difference here"); *Simmons v. Fenton*, 480 F.2d at 136 (federal rule applied, without discussion of state law, to deny amendment for lack of time-

ly notice); *Welch v. Louisiana Power & Light Co.*, 466 F.2d at 1345 (federal rule applied to allow amendment that would not relate back under state law, relying on *Hanna*, liberal federal pleading policies, and sufficiency of Fed.R. Civ.P. 15(c) notice requirements to serve purposes of state limitation statute); *Loudenslager v. Teeple*, 466 F.2d at 250 (federal rule applied to allow amendment barred by state law, citing federal policy of facilitating decisions on merits); *Crowder v. Gordon Transports, Inc.*, 387 F.2d 413, 415–16 (8th Cir. 1967) (federal rule applied to allow amendment where relation back was in "grave doubt" under state law, relying on *Hanna* and federal policy of facilitating decisions on merits).

8. *See Britt v. Arvanitis*, 590 F.2d 57, 60–61 (3d Cir. 1978) applying Fed.R.Civ.P. 15(c) instead of *more* liberal state relation-back rule allowing fictitious "John Doe" pleadings naming unknown defendants; state relation-back rule characterized as merely procedural, not part of substantive state limitations law; *Royal Indemnity Co. v. Petrozzino*, 598 F.2d 816, 820 (3d Cir. 1979) (follows *Britt* to hold state fictitious name practice superseded by federal rule, but applies state "discovery" rule tolling statute of limitations).

typically *more restrictive* nature of state relation-back rules. It is suggested, for example, that the federal standard of notice implicit in Fed.R.Civ.P. 15(c) adequately protects the objective of the state limitation provision, *e.g.*, 6 C. Wright and A. Miller, *supra*, § 1503, at 535, and that displacing Fed.R.Civ.P. 15(c) by applying a more restrictive state rule would frustrate the federal policy of facilitating decisions on the merits, *e.g.*, 3 Moore's Federal Practice ¶ 15.15[2], at 15–193 (2d ed. 1980); 6 C. Wright & A. Miller § 1503, at 535. In contrast, it cannot fairly be said either that the objectives of the more liberal relation-back provisions of Massachusetts law would be protected, or that a policy—whether state or federal—of facilitating decision on the merits would be served, by holding Fed. R.Civ.P. 15(c) applicable in the circumstances of the present case. Indeed, the policy of facilitating decisions on the merits will be served rather than frustrated by applying the Massachusetts law of relation-back in the present case (albeit with some cost to the federal interest in uniformity).

This purposive analysis of Fed.R.Civ.P. 15(c) advanced by commentators is consistent with, and indeed is fortified by, Advisory Committee Notes. The sentence of Rule 15(c) relating to "changing the party against whom a claim is asserted" was added by amendment in 1966. The Advisory Committee Notes to this 1966 amendment call attention to the objectionable consequences of a more restrictive relation-back rule and do not at any point discuss the relationship between the amended rule and a more liberal state law regarding relation-back. See Advisory Committee Notes, reproduced in 12 C. Wright and A. Miller, *supra*, at 394–396 (1973); Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 407–410 (1967).

In view of the compelling indicia that the purpose of the 1966 amendment of Fed.R. Civ.P. 15(c) was to prescribe a more liberal rule of relation-back than some federal decisions had applied in construing the less explicit provisions of Rule 15(c) as it stood before amendment, a proposed interpretation of that amendment as designed to override a more liberal state law provision of relation back is suspect. Approaching Fed.R.Civ.P. 15(c) with this perspective, one finds that literally it states only an affirmative proposition—that an amendment changing a party relates back if prescribed conditions are satisfied. It does not state the negative proposition that an amendment changing a party does not relate back when these conditions are not satisfied. Absent indicia of the purpose of the 1966 amendment, one might be uneasy about reading the amended rule as not addressing the negative proposition, even by implication. In light of the compelling indicia of purpose, however, I conclude that the amended rule does not preclude a more liberal relation-back principle found in the otherwise applicable law of limitation of actions.[9] As in *Walker, supra*, it is there-

---

**9.** Although the opinion in *Ingram v. Kumar*, 585 F.2d 566 (2d Cir. 1978) may appear inconsistent with such a narrow reading of the text of Fed.R.Civ.P. 15(c), the court in that case did explicitly express its preference for a purposive interpretation of the rule. Indeed, in the context of the case before it, that court favored purposive interpretation even on the assumption that it conflicted with a literal reading of the rule:

Although on its face the phrase, "within the period provided by law for commencing the action against him," seems to mean the applicable statute of limitations period, such a literal interpretation is unjustified in jurisdictions where timely service of process can be effected after the statute of limitations has

run. In those jurisdictions, even an accurately named defendant may not receive actual notice of the action against him prior to the running of the statute of limitations. Yet there is no doubt that the action against him is timely commenced. There is no reason why a misnamed defendant is entitled to earlier notice than he would have received had the complaint named him correctly. Calling the problem raised here a "curious but minor difficulty of interpretation ... over the language of the rule referring to the limitations period," Professor (now Justice) Benjamin Kaplan, reporter for the Advisory Committee on Civil Rules, implicitly criticized a district court decision refusing relation back on facts somewhat similar to these. Kaplan *supra* at 410 & n.204. Professor Kaplan noted the

fore unnecessary to address the question posed by *Hanna* whether Fed.R.Civ.P. 15(c), if it were construed as applying here, "would be outside the scope of the Rules Enabling Act or beyond the power of Congress under the Constitution," 446 U.S. at 752, n. 14, 100 S.Ct. at 1986, n. 14.

 In summary, I conclude that Fed. R.Civ.P. 15(c), properly construed, does not govern the issue presented here, was not meant to override a state law of limitation allowing more liberal relation-back, and should not be applied when to do so would give it the practical effect of preempting a state relation-back rule that is an integral part of the state's law of limitation of actions and is more liberal than the federal rule. Therefore I conclude that *Erie* applies and that, in accordance with *Marshall v. Mulrenin*, Mass.R.Civ.P. 15(c) governs the question of relation-back in this case.

### C.

It is clear that the claims plaintiff seeks to add against Uniroyal come within the terms of Mass.R.Civ.P. 15(c). Plaintiff's negligence and warranty claims against Uniroyal in Counts III and IV of the amended complaint arose out of the same "occurrence" (plaintiff's injury) and state the same type of legal "claims" (or "causes of action") asserted against Safetech in the original complaint. The only change in plaintiff's theory of the case relates to the factual question of who did what in relation to the design of the helmet. It seems clear that "plaintiff intended to bring [the action] against the part[ies] liable for the injury," *McLaughlin, supra,* and that plaintiff would have sued Uniroyal initially if he had known in 1975 what he now knows about the alleged role of Uniroyal in the design of his helmet.

 For these reasons, I conclude that if plaintiff is allowed to amend and state claims against Uniroyal, the amendment relates back to the original filing and thus the

claims are not barred by the statute of limitations.

### III.

I turn next to considering the factors relevant under Fed.R.Civ.P. 15(a) to allowing the amendment adding Uniroyal as a party.

After examination of the exhibits filed with the memoranda of Uniroyal and plaintiff, consisting primarily of affidavits, answers to interrogatories, and excerpts from the Lenarth and Plotkin depositions, I find that plaintiff did in fact first learn of the alleged role of Uniroyal and the other new defendants at Plotkin's deposition on December 27, 1979. Whether or not plaintiff previously knew or should have known that the padding in plaintiff's helmet was *made* of Ensolite manufactured by Uniroyal (facts that were disclosed at the Lenarth deposition on March 30, 1976, Lenarth dep. at 50), before Plotkin's deposition plaintiff had no reason to know or suspect that anyone other than the ostensible manufacturer, Safetech, had been responsible for the critical materials and design *decisions* reflected in the construction of plaintiff's helmet.

Also, I find that plaintiff's failure to discover sooner this potentially critical circumstance was not caused by culpable neglect on plaintiff's part in pursuing discovery. Plaintiff's attempts to obtain discovery from Safetech were frustrated by Safetech's protracted failure to produce documents and answer interrogatories. Safetech's apparent resistance to discovery, together with the fact that Safetech, a California corporation, went out of business at some point during discovery, were the effective causes of delay.

The fact that plaintiff's counsel assented to numerous extensions in Safetech's time to answer interrogatories and produce documents (which were finally done in March, 1978 and June, 1979, respectively) does not

---

anomaly of dismissing an action, which "against the original defendant ... would be considered timely brought despite the delayed service." *Id.* at 410 n.204.

We agree that such a result is anomalous and that it is not required by Rule 15(c). 585 F.2d at 571.

of itself make plaintiff responsible for these unfortunate delays. A more reasonable inference, and the one I draw, is that any other course on the part of plaintiff's counsel (*e.g.*, motions to compel or for sanctions) would have been largely futile, in light of the defunct status of Safetech and the fact that this court's overcrowded docket made unlikely a speedy trial or quick action on discovery motions. Under these circumstances, plaintiff's counsel may have found he had no alternative but to accommodate Safetech's counsel because of the difficulties of obtaining a response from an uncooperative client. Plaintiff's counsel reasonably represented that he needed to complete the document discovery before proceeding to depose Safetech president Plotkin. Once the documents were finally produced, plaintiff acted expeditiously to analyze them and to obtain Plotkin's deposition, which disclosed the unanticipated information on the basis of which plaintiff promptly moved to amend to add Uniroyal *et al.*

██ In short, plaintiff has shown a "valid reason" for his delay in moving to add claims against Uniroyal, *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19–20 (1st Cir. 1979). This is not a case of inexcusable failure to prosecute. Plaintiff's motion to amend based on newly discovered evidence should not be disallowed because of his delay in bringing this motion.

Nor is the potential prejudice to Uniroyal in having to defend this action a sufficient reason under the circumstances to warrant denial of plaintiff's motion to amend. Although the passage of considerable time without notice of this action undoubtedly makes more difficult Uniroyal's task in preparing its defense, the severity of the prejudice likely to result is unclear, and in any event, for reasons stated below, is outweighed by other factors relevant to the exercise of discretion under Fed.R.Civ.P. 15(a).

There is no dispute that Uniroyal received no notice of this action until it was served with the amended complaint after February 7, 1980. Uniroyal claims it would be prejudiced in preparing its defense as a result of its lack of timely notice of its potential liability, in that pertinent Ensolite sales and testing records were routinely destroyed between 1975 and 1977, and that the employees involved in the sale of Ensolite to Safetech and in Ensolite research and development have left Uniroyal's employment. Murphy affid. ¶¶ 8, 10–12. However, there is no contention that the departed employees are deceased or have become unavailable to Uniroyal as witnesses. See Murphy affid. ¶ 12. It may develop that it is the testimony of these employees, rather than documentary evidence, that is critical to the success or failure of plaintiff's theory of Uniroyal's liability—*i. e.*, what materials and design advice did Uniroyal's "sales engineers" give Safetech that was incorporated into the design of plaintiff's helmet. The significance of lost sales records is speculative; it appears that there is no dispute that Uniroyal sold the particular Ensolite in question to Safetech, and the density and specifications of the Ensolite used in plaintiff's helmet may be verified from other sources. Also, some such records have been retained by Uniroyal in connection with a nonpayment suit against Safetech. Murphy affid. ¶ 10.

The unavailability of test data regarding the Ensolite used in plaintiff's helmet is a more serious matter. Data concerning the material's density and compression resistance properties indeed appear "highly pertinent to Uniroyal's defense that the material supplied to Safetech was adequate for its intended purpose." Murphy affid. ¶ 11. However, the fact that Uniroyal may not be able to "duplicate" the previous test data does not establish that Uniroyal will be completely unable to perform substitute tests that would provide relevant evidence. Therefore, the claim of prejudice from the lost test data is overstated.

The prejudice to plaintiff in being precluded from trying its claims against Uniroyal (which is alleged to have had substantial and perhaps primary responsibility for the design defect complained of) is clearly

substantial and weighs even more heavily than the potential prejudice to Uniroyal from the delay for which neither plaintiff nor Uniroyal is accountable. Moreover, as discussed *supra*, Part II, under the controlling First Circuit rule, the applicable Massachusetts rule on relation-back of amendments adding parties reflects a strong policy in favor of allowing plaintiffs to join at *any* time additional defendants allegedly liable for the injury that gave rise to the original action. That rule and policy cannot be ignored in addressing Uniroyal's motion. Absent a showing that the lateness of the amendment was caused by plaintiff's inexcusable delay or neglect, it would be inappropriate for the court to exercise its discretion to disallow an amendment adding such a defendant in the circumstances of the present case.

For these reasons, treating the matter as one of discretion to reconsider under Rule 15(a) the previous allowance of the amendment,[10] I find it appropriate and fair to allow plaintiff to add Uniroyal as a defendant at this time, and therefore inappropriate to vacate the order allowing the amendment.

### IV.

In its Supplementary Memorandum in support of its motion to vacate, Uniroyal made the additional argument that even if plaintiff's breach of warranty claims relate back, they are barred by lack of privity. Plaintiff's memoranda did not address this issue.

Even if valid, this argument goes to only part of plaintiff's claim and would not support a denial of leave to file the amended complaint. This ruling is, of course, without prejudice to defendants' right to present this argument again by appropriate motion or request for ruling.

---

10. The motion for leave to amend and add new parties was presented and allowed at a time when, as is ordinarily the case, the intended new parties were not before the court and had not been heard in opposition. Certainly Uniroyal is entitled to the court's consideration of the issue without being prejudiced by an order

### ORDER

For the above reasons, it is ORDERED:

Defendant Uniroyal's Motion to Vacate Allowance of Motion to File Amended Complaint is denied.

entered before it was afforded an opportunity to be heard. Thus, in ruling on Uniroyal's motion, just as in ruling on a request for leave to amend, the court may consider all factors appropriate to the exercise of discretion under Fed.R.Civ.P. 15(a).