PETER TRITSCH vs. BOSTON EDISON COMPANY.

Suffolk.    December 4, 1972. — March 2, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Negligence,* Electric light pole.  *Proximate Cause. Damages,* For
tort, Mitigation.  *Joint Tortfeasors. Error,* Whether error shown.

In an action against the owner of an electric light pole, where there
was evidence that for at least four to six years the pole had been
cracked all the way through three feet above the sidewalk, that
there was no record that the owner had made any repairs to the
pole, and that a fire engine struck the pole at a speed of three to
five miles an hour, causing it to fall on the plaintiff and injure
him but causing slight damage to the fire engine, findings were
warranted that the owner was negligent in failing to discover and
remedy the defect in the pole; and that the owner's negligence
was a proximate cause of the plaintiff's injuries. [181–182]
In an action against joint tortfeasors, the owner of an electric light
pole and two firemen, for negligence, in which, during the trial,
the judge severed the cases against the firemen and allowed the
trial to proceed solely against the owner, there was no error in
exclusion of questions which the owner's attorney addressed to
the plaintiff relating to a settlement agreement with the firemen
where the owner's attorney made no offer of proof as to the terms
of the settlement [182–183]; but because of the possibility that the
amount of the settlement agreement, when added to the judgment
against the owner, might result in excessive compensation for
the plaintiff, this court ordered that execution should not be issued
for at least sixty days after the date of the rescript, in order to
provide the owner with an opportunity to protect itself in an
equity proceeding [183, 184].

TORT.   Writ in the Superior Court dated September
5, 1968.

The action was tried before *Mitchell, J.*

*Francis J. Swift* for the defendant.
*Morris Michelson* for the plaintiff.

HENNESSEY, J.   This is an action in tort brought in the
Superior Court originally against the Boston Edison Com-
pany (Edison), John F. Grimes and Robert F. Hawkins.
The two counts against the individual defendants are for

the negligent operation of a motor vehicle. The count against Edison is for the negligent maintenance of a concrete electric light pole. After the plaintiff introduced some of his evidence before a jury, the judge allowed his motion to sever the counts against Grimes and Hawkins and to go forward only against Edison. At the close of all the evidence, Edison's motion for a directed verdict was denied and the jury returned a verdict for the plaintiff. Edison is here on an outline bill of exceptions alleging error in the denial of its motion for a directed verdict, in the exclusion of certain testimony relating to an agreement between the plaintiff, Grimes and Hawkins, and in the exclusion of certain questions during the cross-examination of the plaintiff's witness.

We summarize the evidence. The plaintiff lived in an apartment on Marlboro Street in Boston. There is a public alley behind his apartment which is about nine feet wide. On the sidewalk of this alley there was a concrete electric light pole which was owned and installed by Edison. The pole was hollow in the center through which wires and steel reinforcing rods went up to an electric light. The pole was twelve feet above the ground, four feet below the ground and about six inches from the roadway. For at least four to six years the pole was cracked all the way through three feet above the sidewalk. The crack was approximately one-half inch to two inches wide and went completely around the pole and through the whole of the concrete. The pole leaned in the direction of the alley. Edison had in its employ men whose duty it was to inspect and repair its poles, but there was no record of any repairs to this pole.

On the evening of May 15, 1968, a fire occurred in a building across the alley from the plaintiff's apartment. The plaintiff came out of his apartment and stood on the sidewalk of the alley a few feet from the pole. A fire engine from the Boston fire department driven by firefighter Grimes came down the alley and stopped before reaching the pole. The engine was eight feet wide and its tires scraped the curbing. While stopped, firefighter

Hawkins left his position as tillerman at the wheel at the rear of the truck, and swung the bucket over the left side of the truck. The bucket is composed of the seat, the windshield and the steering wheel. Grimes then drove forward approximately three to five miles an hour for about twenty feet until the bucket struck the pole. The upper part of the pole separated from the lower part at the crack. It toppled over and struck the plaintiff, knocking him unconscious and injuring his head, shoulder, chest, ribs and arm. There was a slight dent in the left rear fender of the fire engine and a crack in the windshield of the overhanging bucket.

1. Edison argues that it was error to deny its motion for a directed verdict. It claims that there was insufficient evidence to charge it with negligence and that, even if there were, its negligence was not a proximate cause of the injury. Edison installed and owned the pole. It had the duty to see that it was reasonably fit for use and had a continuing duty to inspect it and repair it when necessary. *Reil* v. *Lowell Gas Co.* 353 Mass. 120, 127. *Robert Williams, Inc.* v. *Ferris*, 355 Mass. 288, 292–293. *Leavitt* v. *Glick Realty Corp.* 362 Mass. 370, 376. There was evidence that the pole was cracked clear through, and this condition was an obvious one. There was evidence that the pole leaned to one side and there was also evidence that it had been in this condition for four to six years and there had been no attempt to repair it. Hence, there was evidence from which the jury could properly infer that Edison was negligent in failing to discover and remedy the defect in the pole.

If liability is to be established against Edison, its negligence must necessarily be shown to be a proximate cause of the plaintiff's injuries. Edison's argument on this issue, in support of its motion for a directed verdict, has two facets. Firstly, it says that a conclusion is not warranted that the crack in the pole had anything to do with the accident and the plaintiff's injury. In other words, Edison contends that, so far as the proof shows, the collision of the truck with the pole was the sole cause of the

fall of the pole. However, the jury could properly conclude that the defect in the pole was a factor in its fall by reason of the evidence that the break occurred where the crack had been and that the impact was relatively minor as shown by the slight damage to the vehicle and other related evidence.

Secondly, on the issue of proximate cause, Edison argues that the conduct of Grimes and Hawkins in causing the truck to collide with the pole was a superseding intervening cause, and that the legal consequences cannot be charged to Edison. We consider here the defective condition of the pole and its proximity to the public way for automobile travel. Even assuming that the fire truck was operated negligently, the jury could find that the negligence of Edison was a substantial legal factor in bringing about the harm to the plaintiff. See *Bannon v. Peerless Weighing & Vending Mach. Corp.* 318 Mass. 607, 609; *Smith* v. *Eagle Cornice & Skylight Works,* 341 Mass. 139, 141; *Luz* v. *Stop & Shop, Inc. of Peabody,* 348 Mass. 198, 204–205; *Gibson* v. *Garcia,* 96 Cal. App. 2d 681, 684–687; Restatement 2d: Torts, §§ 435, 447.

2. Edison's attorney addressed to the plaintiff certain questions which generally related to a settlement agreement with Grimes and Hawkins. These questions were excluded by the judge. At about that same time in the trial, the judge severed the cases against Grimes and Hawkins, and allowed the trial to proceed solely against Edison. Edison now contends that it should have been allowed to establish the details of the settlement agreement, and that its questions to that end should not have been excluded.

A plaintiff cannot properly receive remuneration in excess of his actual damages. *O'Neil* v. *National Oil Co.* 231 Mass. 20, 29. *Nugent* v. *Boston Consol. Gas Co.* 238 Mass. 221, 236–237. *Wadsworth* v. *Boston Gas Co.* 352 Mass. 86, 94. In mitigation of damages, a defendant is entitled to show in evidence the amount of money paid or promised to the plaintiff by a joint tortfeasor on account of the same injury. *Daniels* v. *Celeste,* 303 Mass. 148,

152. *Sluckus* v. *Fraktman,* 322 Mass. 379, 385. *Selby* v. *Kuhns,* 345 Mass. 600, 608. G. L. c. 231B, § 4.

It is clear that an agreement for settlement was reached between the plaintiff, Grimes and Hawkins. The difficulty is that conferences between counsel and the judge during trial, which occurred at about the time of the severance of the cases and the exclusion of questions, and apparently related to the settlement agreement, are not recreated in the record before us. Edison's attorney made no offer of proof as to the terms of the settlement. We are sympathetic to his dilemma that he was unable to make such an offer, as to this agreement to which Edison was not privy, unless and until he was allowed to interrogate the witnesses. There is some reason for us now to believe, because of representations in the plaintiff's brief, that the settlement agreement between the plaintiff, Grimes and Hawkins, was not an unconditional agreement to pay money, but was contingent upon the results of the action against Edison.

Since on the record no error is demonstrated in the exclusion of the questions concerning the settlement agreement, and since the trial was otherwise without error, it is appropriate for us to overrule the exceptions of Edison. Nevertheless, a possibility exists that the settlement agreement was such as to result, when added to the effect of the judgment and execution against Edison, in excessive compensation for the plaintiff. A bill in equity brought by Edison in the Superior Court should, considering the injunctive powers of that court and the opportunities for discovery, protect Edison against an unjust result. We observe, too, that the result we have reached here in no way interferes with the right of Edison to proceed against other persons for contribution, within the time limitation imposed by the statute in these circumstances. G. L. c. 231B, § 3 (c).

3. Other issues concerning the admission and exclusion of evidence are argued so inadequately in Edison's brief that we treat them as waived. S.J.C. Rule 1:13, 351 Mass. 738.

4. Edison's exceptions are overruled but, in order to provide Edison with an orderly opportunity for reasonable protection in an equity proceeding as discussed above, execution herein shall not be issued from the Superior Court for at least sixty days after the date of this rescript.

*So ordered.*