BOSTON EDISON COMPANY *vs.* PETER TRITSCH.

Suffolk.    March 2, 1976. — May 11, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& KAPLAN, JJ.

*Damages.   Joint Tortfeasors.   Interest.   Judgment.*

Where two of three joint tortfeasors entered into a settlement with a
plaintiff but did not pay the agreed amount until after a trial in
which the jury, to whom the settlement had not been disclosed, re-
turned a verdict against the third tortfeasor, an electric company,
for the entire amount of the plaintiff's recovery, the electric com-
pany was liable for the full judgment in the amount of the verdict
with interest from the date of commencement of the action; the re-
spective amounts of the settlement payment and the electric com-
pany's own partial payment, each made a substantial time after
judgment was entered, were to be applied first to satisfy the interest
obligation on the judgment and then to reduce the principal. [263-
266]

BILL IN EQUITY filed in the Superior Court on March 30,
1973.

The suit was heard by *Connolly*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Morris Michelson* (*Edward Rabinovitz* with him) for
the defendant.

*Francis L. Swift* for the plaintiff.

KAPLAN, J.   By writ dated September 5, 1968, Peter
Tritsch brought an action in the Superior Court in tort
for negligence against the Boston Edison Company (Edi-
son) and John F. Grimes and Robert F. Hawkins, both
fire fighters for the city of Boston, for injuries suffered
when an electric light pole maintained by Edison toppled
on him after having been struck by a fire truck operated
by Grimes and Hawkins. During the trial of the action
Tritsch made an agreement of settlement with Grimes and

Hawkins (the terms are set out in the margin[1]), and the trial continued against Edison alone. The jury brought in a verdict for Tritsch in the amount of $26,500. Under the practice then current, judgment did not enter at this point because Edison sought and secured review by a bill of exceptions.[2] The exceptions were overruled by this court. *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179 (1973). The court's opinion noted that the trial judge had excluded certain questions addressed by Edison to the plaintiff about the settlement agreement with Grimes and Hawkins, questions that were relevant because evidence of payments received in settlement would be properly introduced to limit the possible recovery against Edison. *Id.* at 182-183; see G. L. c. 231B, § 4; *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 94 (1967); *Daniels* v. *Celeste*, 303 Mass. 148, 152 (1939); *O'Neil* v. *National Oil Co.*, 231 Mass. 20, 28-29 (1918). Because Edison had made no offer of proof as to the terms of the settlement, the court held there was no error. However, we went on to say: "[A] possibility exists that the settlement agreement was such as to result, when added to the effect of the judgment and execution against

---

[1] "In the above entitled cause it is agreed that entry may be made of judgment forthwith for the plaintiff on Count I in the sum of Eleven Thousand Five Hundred and Forty ($11,540.00) Dollars without interest or cost, damages without costs, and that execution thereon may issue forthwith waiving right to file exceptions. Judgment forthwith for the defendant Robert F. Hawkins on Count II, parties waiving right to file exceptions."

Count I was the claim against Grimes, and Count II the claim against Hawkins.

Tritsch asserts that an understanding was reached with the attorney representing Grimes and Hawkins that the agreement for judgment would not be entered until after the disposition of the suit against Edison.

Edison does not suggest that the delay in entering judgment or in the payment to Tritsch was in bad faith or was for the purpose of placing a disproportionate burden on Edison.

[2] See Rule 79 of the Superior Court as before July 1, 1974, set out in n.5 below.

Rule 58 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 826, effective July 1, 1974, introduces a new practice requiring the clerk to enter judgment "forthwith" "upon a general verdict of a jury" unless the court orders otherwise.

*Edison,* in excessive compensation for the plaintiff. A bill in equity brought by Edison in the Superior Court should, considering the injunctive powers of that court and the opportunities for discovery, protect Edison against an unjust result. We observe, too, that the result we have reached here in no way interferes with the right of Edison to proceed against other persons for contribution, within the time limitation imposed by the statute in these circumstances. G. L. c. 231B, § 3 (*c*).

"...

"... Edison's exceptions are overruled but, in order to provide Edison with an orderly opportunity for reasonable protection in an equity proceeding as discussed above, execution herein shall not be issued from the Superior Court for at least sixty days after the date of this rescript." 363 Mass. at 183-184.

Rescript was received by the Superior Court on March 5, 1973.

Edison filed the suggested bill in equity seeking, inter alia, a deduction from the verdict of $11,540, the amount specified in the settlement agreement. Pursuant to an interlocutory decree the agreement for judgment was entered against Grimes and in favor of Hawkins on December 21, 1973. Tritsch received payment of $11,540 on behalf of Grimes on April 12, 1974. Tritsch and Edison thereupon each moved for summary judgment, the debated question being the way of figuring Edison's liability to Tritsch. A judge of the Superior Court, ruling on the motions, reduced the verdict by the amount of the settlement to $14,960, allowed interest on the $14,960 from the date of the writ, and adjusted for a partial payment made by Edison, and for costs. Judgment entered on March 5, 1975.[3]

[3] On December 20, 1973, Tritsch and Edison had entered into a "stipulation" under which Edison paid Tritsch the uncontested portion of its liability, a total of $19,800.95, on February 7, 1974. The judge made the latter date a critical one in the computation. He directed the clerk, in figuring the judgment to which Tritsch was entitled, to add to the reduced verdict, interest thereon from the date of the writ to February 7, 1974, and costs, and subtract the amount of Edison's payment. On the balance thus arrived at, interest was to run from Febru-

On Tritsch's appeal from this judgment, we took the case for direct review under G. L. c. 211A, § 10 (A).

According to G. L. c. 231, § 6B, as amended through St. 1960, c. 298, § 3, the clerk of court in entering judgment is to add to the amount of the verdict, interest from the date of the writ and costs.[4] The judgment itself then bears interest. See G. L. c. 235, § 8; *Boyer* v. *Bowles,* 316 Mass. 90, 95 (1944); *Nugent* v. *Boston Consol. Gas Co.,* 238 Mass. 221, 238 (1921); *Bowers* v. *Hammond,* 139 Mass. 360, 362 (1885); *Moore-McCormack Lines, Inc.* v. *Amirault,* 202 F.2d 893, 895 (1st Cir. 1953).

Putting aside details of the accounting, Tritsch's view is that judgment in the tort action should be taken to have entered on March 19, 1973, following this court's rescript, for an amount representing the aggregate of the $26,500 verdict, interest thereon from the date of the writ to March 19, 1973, and costs. Pointing to Rule 79 of the Superior Court, in effect in 1973, Tritsch says that the clerk was bound in the normal course to enter judgment at "the time for entering judgment next following the tenth day after the receipt of the rescript,"[5] and there was no basis for any manipulation of the amount of the verdict on which the

---

ary 7, 1974, to the entry of judgment. The clerk estimated that Edison owed a balance of $340.32, plus interest of $25.61, and he therefore entered judgment for $365.93.

In the view we take, as will be seen, the February 7, 1974, date does not have all the effects ascribed to it by the judge below.

[4] Section 6B was amended by St. 1973, c. 1114, § 155, to conform to the terminology of the new rules: interest is to run "from the date of commencement of the action."

[5] Rule 79 provided: "Judgment in civil actions and proceedings ripe for judgment shall be entered by the clerk, unless the party entitled thereto otherwise requests in writing or the court otherwise orders, at ten o'clock in the forenoon, on Monday of each week. The court may order judgment to be entered at other times. On written agreement of the parties filed with the clerk judgment may be entered by the clerk on any day, without further order.

"An action or proceeding shall not be ripe for judgment until the time for filing exceptions has expired ....

"Judgment after rescript from the supreme judicial court shall not be entered by the clerk as of course until the time for entering judgment next following the tenth day after the receipt of the rescript. ..."

judgment was to be based. Against the full judgment which would itself bear interest, Edison would be allowed credits for the amount of the settlement received by Tritsch on April 12, 1974, and the partial payment made by Edison. The judge's mistakes would begin with his reducing the verdict by the amount of the settlement in figuring the judgment.[6]

Edison's response is that judgment should not be taken to have entered promptly following our rescript because our decision contemplated further action by the court and hence the case was not ripe for judgment. But the fact is that our direction to the court below was only that execution on the judgment be delayed;[7] and judgment is treated as having been entered by the clerk when required, even though the physical act may not have been carried out. See *Sullivan* v. *Jordan*, 310 Mass. 12, 15 (1941); *Nugent* v. *Boston Consol. Gas Co.*, 238 Mass. 221, 238. (1921); cf. *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authority*, 367 Mass. 57, 62-63 (1975).

Edison proceeds to argue that even if judgment did enter, and normally the result suggested by Tritsch would apply, the judge acted properly in reducing the verdict so as to avoid an injustice. We do not consider the normal result unjust.

In our earlier opinion we were concerned lest Tritsch receive "double" payment — payment by Edison of the judgment based on the whole verdict, plus the settlement. We had no design to deprive Tritsch of a single full recovery. Had he been injured by a single tortfeasor and obtained a favorable judgment on March 19, 1973, a payment on account by the judgment debtor in April, 1974,

---

[6] Approximately four and one-half years elapsed between the date of the writ and March 19, 1973. A verdict of $26,500 would bear interest of approximately $7,155 during that period, whereas the reduced verdict of $14,960 would bear interest of only $4,039. The judge's manner of crediting the settlement of course also reduced the interest that accrued after March 19, 1973.

[7] Indeed, on April 23, 1973, Edison moved to stay both the entry of judgment and the issuance of execution, but the motion was allowed only as to execution.

would have been applied to reduce the balance outstanding on the judgment on that date. We do not perceive why the result should be different by reason of the fact that the partial payment came from another source. But according to the judge below, the settlement payment received in April, 1974, was treated as if it had been received at the time of the writ.

Edison might say that the disposition made below saves it from paying an amount which is disproportionate in some sense. But we do not find a sufficient reason for denying full compensation to Tritsch. Had Tritsch not received payment from the other tortfeasor, he could have collected his entire judgment from Edison (see *Donnelly* v. *Larkin,* 327 Mass. 287, 296 [1951]; *Proctor* v. *Dillon,* 235 Mass. 538, 549 [1920]), a result unchanged by the Uniform Contribution Among Joint Tortfeasors Act (enacted here as G. L. c. 231B). See G. L. c. 231B, §§ 1 (*b*), 3 (*e*); *Tino* v. *Stout,* 49 N.J. 289, 298 n.3, 300-301 (1967). And under the act where, among multiple tortfeasors, one has settled in good faith and another has not settled, the claim against the latter is reduced by the settlement, the former being protected against further liability.[8] G. L. c. 231B, § 4. See generally Hennessey, Torts: Indemnity and Contribution, 47 Mass. L.Q. 421, 427-434 (1962); Case Comment, 43 B.U. L. Rev. 417 (1963). We do not see that Edison is unfairly burdened where, as here, it is to be credited with the settlement payment as if it had made payment itself.

Several of our cases indicate that settlement with a joint tortfeasor not a party to the action may be disclosed to the jury in order that they may adjust their verdict. See, e.g., *Wadsworth* v. *Boston Gas Co.,* 352 Mass. 86, 94 (1967); *Sluckus* v. *Fraktman,* 322 Mass. 379, 384-385 (1948); *O'Neil* v. *National Oil Co.,* 231 Mass. 20, 28-29 (1918). See generally Annot., 94 A.L.R.2d 352 (1964). These cases suggest that the jury should subtract the

---

[8] The common law in this jurisdiction reached a similar result. See *O'Neil* v. *National Oil Co.,* 231 Mass. 20, 28-29 (1918); *George W. Gale Lumber Co.* v. *Bush,* 227 Mass. 203, 205 (1917); W. Prosser, Torts § 50 (4th ed. 1971).

amount received in settlement from the total damages in arriving at their verdict. Edison might argue that, had it been allowed to introduce the settlement at trial, the jury might have adjusted their verdict to $14,960, as the judge below has done. But Tritsch had not in fact received any payments in settlement. Cf. G. L. c. 231B, § 1 (*b*), (*c*) (right of contribution allowed only after payment to injured party). The cases, indeed, are concerned with the principle of preventing "double" recovery by the plaintiff, and do not offer guidance on the specifics of the accounting in a case like the present where there has been substantial delay in the actual recovery, and interest factors are of practical importance.

The judgment under review is vacated, and the case is remanded with directions to enter judgment to be determined as follows. (a) The clerk will calculate the amount owed by Edison on March 19, 1973 (when judgment is taken to have entered). This was $26,500 (the amount of the verdict) plus interest thereon from the date of the writ (September 5, 1968) to March 19, 1973, plus costs.[9] (b) The clerk will then calculate the balance owed by Edison on February 7, 1974 (when Edison made partial payment of $19,800.95). This was the amount determined under (a), plus interest thereon from March 19, 1973, to February 7, 1974, less $19,800.95.[10] (c) The clerk will then calculate the balance owed by Edison on April 12, 1974 (when the settlement payment on behalf of Grimes was received).

---

[9] It is argued that costs should be adjusted to include an additional amount, omitted by mistake, for depositions and briefs. Unless agreed by the parties, the matter may be inquired into on remand.

[10] Edison's partial payment (like the settlement payment by Grimes dealt with in [c]) is first applied to satisfy the interest obligation. When, as here, the payment exceeds the interest due, the rest goes to reduce the principal, which reduces the amount on which subsequent interest accrues. See *Blair* v. *Travelers Ins. Co.,* 291 Mass. 432, 438-439 (1935). If the payment was less than the interest due, interest would continue to accrue on the principal until a time when the payments taken together exceeded the interest then due, the rest being applied to reduce the principal. See *Downer* v. *Whittier,* 144 Mass. 448, 450-451, 452 (1887). See generally 45 Am. Jur. 2d Interest and Usury § 99 (1969).

This was the amount determined under (b), plus interest thereon from February 7, 1974, to April 12, 1974, less $11,540. (d) Edison's current obligation is the amount determined under (c), plus interest thereon from April 12, 1974.

*So ordered.*