ANTHONY HARVEY & another[1] vs. ESSEX BANCORP, INC.

No. 87-113.

Essex.  November 18, 1987. — January 26, 1988.

Present: ARMSTRONG, BROWN, & KASS, JJ.

Damages, Interest. Joint Tortfeasors. Interest.

In a tort action in which a jury returned verdicts assessing damages of
    $6,001 in favor of each of two plaintiffs, and then subtracted $6,000
    which had been paid in settlement to each of the plaintiffs by a joint
    tortfeasor, leaving net damages in each case of $1.00, the plaintiffs were
    each entitled to calculation of interest on the entire amount of the verdict
    from the date of commencement of the action to the date of the $6,000
    settlement payment. [325-326]

CIVIL ACTION commenced in the Superior Court Department
on April 22, 1980.

The case was tried before John T. Ronan, J.

William R. Sullivan for the plaintiffs.

Thomas D. Dolan for the defendant.

KASS, J. Upon a complaint charging negligence, false impris-
onment, and assault and battery, a jury returned verdicts asses-
sing damages at $6,001.00 in favor of each of Anthony Harvey
and Deborah Harvey. From each verdict, the jury subtracted
$6,000 which had been paid in settlement to each of the plain-
tiffs by a codefendant, leaving net damages in each case of
$1.00. The single question before us is whether prejudgment
interest should be calculated on the aggregate amount of a
jury's verdict, or on the net verdict after a settlement has been
deducted.

We outline pertinent facts the jury could have found, taking
the evidence in the light most favorable to the plaintiffs. The

[1] Deborah Harvey.

torts of which the Harveys complained came about through a combination of electronically conveyed credit information and more than a touch of overreaction by employees of a department store. On the evening of November 24, 1978, the Harveys embarked upon the routine enough errand of buying snow tires from their local K Mart store. They proposed to rely on a Mastercharge credit card issued by Essexbank, a subsidiary of Essex Bancorp, Inc. (collectively referred to as the "bank"). Cautiously, they checked with the bank whether there was sufficient credit within their limit to cover what they expected to buy. The bank assured them that there was.

At the K Mart store, the plaintiffs split up. Anthony Harvey went to the automotive shop for the snow tires and Deborah Harvey repaired to the main store for other purchases. After selecting tires and having them mounted, Anthony, as instructed by the tire salesman, went to a cashier, where he presented an invoice and his Mastercharge card. An inquiry by the cashier for credit authorization from New England Bankcard Association, Inc., produced the electronic credit transfer equivalent of "tilt." The cashier was told to decline the sale and to confiscate Anthony's credit card.

In accordance with standard instructions, the cashier conveyed this disquieting information to her supervisor, who, in turn, notified K Mart's security office. K Mart's security manager materialized at the cashier's booth almost at once. He informed Anthony that his credit card would not be returned and that his car was "impounded." The security man demanded that Anthony surrender his car keys so that a K Mart employee might drive the car to where the new snow tires could be removed and the old ones remounted.

Oblivious to this unfolding drama, Mrs. Harvey returned to the automotive department and sat herself in the Harvey automobile to await her husband's return. Presently an agitated K mart employee, rather than Anthony Harvey, appeared, the Harvey car keys in hand. With an order to Mrs. Harvey not to move from the car, the K Mart employee drove it onto a lift so that the old and new tires could be swapped. One gathers that Mrs. Harvey was allowed to step out of the car before it

was carried aloft by the lift. K Mart charged the Harveys for the successive mounting and remounting.

It was all a mistake. The Harveys' credit was, in fact, good; the bank had furnished erroneous information to New England Bankcard.[2] Before trial, K Mart settled with each plaintiff for $6,000. By agreement of the parties, the jury were informed of the settlement.

In his charge, the trial judge instructed the jurors to find "full fair damages" as to each plaintiff and then to subtract the $6,000 which K Mart had paid. As to each the jury verdict slips assessed "damages in the sum of $6,001.00 - $6,000.00 = $1.00."

In the first instance, the clerk assessed interest on $6,001 before subtracting the settlement figure. The judgment in each case came to $4,598.19. Essex Bancorp moved succcessfully to strike the interest computation from the judgment and to substitute in its place a computation based on $1.00 in damages, i.e., $.75. The Harveys preserved the point for review by moving for reinstatement of the original judgments and for a new trial. Those motions were denied.

There is concurrence between the parties that interest is to be computed in accordance with G. L. c. 231, § 6B, as amended by St. 1982, c. 183, § 2, which requires that interest at the rate of twelve percent from the date of commencement of the action shall be added to the "amount of damages." The statutory language does not answer the question whether "amount of damages" is the gross figure or the net figure when a settlement payment by a joint tortfeasor is in the picture. Making the jury aware that a settlement has been paid is a long-accepted practice. See *O'Neil* v. *National Oil Co.,* 231 Mass. 20, 28-29 (1918); *Daniels* v. *Celeste,* 303 Mass. 148, 152 (1939); *Sluckus* v. *Fraktam,* 322 Mass. 379, 384-386 (1948); *Wadsworth* v. *Boston Gas Co.,* 352 Mass. 86, 94 (1967); *Boston Edison Co.* v. *Tritsch,* 370 Mass. 260, 265 (1976). It is not, however, an invariable or required practice.

---

[2] A verdict was directed in favor of New England Bankcard by the trial judge, and there is no appeal from that action.

See *Franklin* v. *Guralnick,* 394 Mass. 753, 755 (1985); Annot., 94 A.L.R. 2d 352, 359 (1964).

It is word play to suggest that the damages here are $1.00. The jury went to obvious pains to state that in each case its view of a just verdict for the injuries sustained by each plaintiff was an aggregate $6,001. See *Turcotte* v. *DeWitt,* 333 Mass. 389, 392 (1955). Once this is recognized, it follows on the authority of *Boston Edison Co.* v. *Tritsch,* 370 Mass. at 264-265, *Franklin* v. *Guralnick,* 394 Mass. at 754-755, and *Goulet* v. *Whitin Machine Works, Inc.,* 399 Mass. 547, 556 (1987), that interest is to be calculated on the gross damages, i.e., prior to deduction of settlement. The reason, as elucidated in *Tritsch,* at 264-266, is that the plaintiff ought not to receive a lesser judgment (i.e., damages, interest, and costs) because one among multiple tortfeasors has settled in good faith. At a rate of twelve percent per year, prejudgment interest is a formidable factor in litigation. It would not encourage joint tortfeasors to settle if they were secure in the knowledge that they were relieved of obligation to pay interest on damages to the extent that other tortfeasors had already made settlement. In this case the $6,000 settlement paid by K Mart to each plaintiff should be viewed as a credit against the jury verdict, nothing more. *Boston Edison Co.* v. *Tritsch,* at 265.

The judgment is reversed. The case is remanded to the Superior Court with directions to the clerk to enter a new judgment with prejudgment interest computed as to each plaintiff on $6,001 from the date of the commencement of the action to the date of payment of the $6,000 settlement (August 29, 1986) and on one dollar from that date to the date of judgment.

*So ordered.*