OPINION OF THE COURT
Phillip R. Rumsey, J.
The above-captioned insurance coverage action was brought by Monarch Cortland, a Division of Monarch Machine Tool Company, Inc. (Monarch) against its comprehensive insurance carrier, Columbia Casualty Company (Columbia).
Monarch was insured by Columbia under a commercial casualty policy providing comprehensive general liability coverage with policy limits of $1,000,000 for bodily injury or property damage (the insurance policy). Monarch was also insured by Allianz Underwriters Insurance Company (Allianz) under an umbrella liability policy with policy limits of $20,000,000 per occurrence and $20,000,000 aggregate in excess of the Columbia primary limits of $1,000,000 per occurrence and aggregate.
The complaint in the first, second and third causes of action seeks monetary damages from Columbia based upon an alleged obligation of Columbia under the insurance policy to pay preverdict interest on a personal injury verdict. The fourth cause of action alleges that Columbia was negligent and/or breached its obligations under the insurance policy to notify Monarch or its excess carrier, Allianz, of the potential for an excess judgment.
The matter comes before the court on a series of motions. Columbia initially moved for partial summary judgment dismissing the first, second and third causes of action. Monarch opposed the motion and cross-moved for summary judgment on the fourth cause of action. Columbia then cross-moved for summary judgment on the fourth cause of action.
FACTS
The material facts, supported by the exhibits, are stated in the affidavits of Samuel M. Vulcano, Esq., David E. Lundeen, *100 and Alan J. Pierce; the facts as stated in the affidavits are not in contention and are accepted by the court. The following limited recitation of the facts provides background for the court’s analysis.
Monarch was impleaded in a lawsuit in Massachusetts brought by William Simmons (Simmons suit). Simmons sought to recover for serious personal injuries sustained during his employment at Raytheon Company when a drill bit ejected from a tool holder striking him in the left eye. Subsequently, Simmons successfully moved to name Monarch as a direct defendant in the Simmons suit. Simmons’ claim against Monarch was based upon the theory of products liability.
Columbia defended Monarch in the Simmons suit. Prior to the trial of the Simmons suit, all parties other than Monarch settled with Simmons for $416,000. At the trial of the Simmons suit, a verdict was rendered against Monarch in the amount of $1,125,000.
Applying Massachusetts law, preverdict interest at 12% was calculated on the verdict for the period from the commencement of the Simmons suit (Mar. 26, 1984) to the date of the verdict (Nov. 29, 1989) and totalled $766,125.
After posttrial motions, an amended judgment was entered consisting of the jury award plus preverdict interest minus the $416,000 paid by the parties who settled prior to trial for a total of $1,475,125.
An appeal was taken from the amended judgment which was affirmed. During the pendency of the appeal, postverdict interest accrued in the amount of $479,416.
Following the appeal the gross amount due Simmons was $1,954,541 (jury award [$1,125,000] and preverdict interest [$766,125], plus $479,416 postjudgment interest).
Payment was made to Simmons as follows: Columbia paid its policy limit of $1,000,000 and the postjudgment interest of $479,416; the remainder of the $1,475,125 amended judgment, $475,125, was paid by Monarch.
PREVERDICT INTEREST
The complaint alleges that in failing to pay all preverdict interest, Columbia has breached its obligation under the insurance policy.
The determination of this issue is naturally dependent upon *101 the interpretation of the insurance policy and what obligations Columbia shoulders thereunder.
The insurance policy provides that Columbia "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * but the company shall not be obligated to pay any * * * judgment * * * after the applicable limit of the company’s liability has been exhausted by payment of judgments.” This language is not uncertain or ambiguous. Where provisions of an insurance policy are clear and unambiguous, courts should not strain to superimpose unnatural or unreasonable construction (Goldman & Sons v Hanover Ins. Co., 80 NY2d 986 [1992]).
Plainly, under the language of the policy, Columbia is not required to pay any judgment amount in excess of the policy’s $1,000,000 limit.
Over and above the limit, the policy makes specific provision for additional payments under the section entitled "Supplemental Payments”. In that section the policy definitively sets out those payments it will make over the applicable limit of liability. It is under this section that Columbia agrees to pay, in addition to the applicable limit of liability, "all interest on the entire amount of any judgment therein which accrues after the entry of judgment”. (Affidavit of Samuel M. Vulcano, Esq., exhibit F.)
Nowhere in the policy, however, is Columbia obligated to pay preverdict interest aside from, in addition to, or in excess of the policy limit of liability.
Monarch would argue that absence of such a provision requiring payment of preverdict interest is meaningless; it contends that because there is no provision "prohibiting” the payment of preverdict interest, the policy is unclear.
However, this specious reasoning would assume that silence on a particular subject automatically renders an agreement unclear, and that parties to a contract must not only agree on what they are obligated to do, but, at their peril, must enumerate and rule out every matter that they are not obligated to do.
The insurance policy clearly sets out the obligations of the parties and the limits of those obligations. "It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered * * * and that where the intention of the parties may be gathered *102 from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract” (Bethlehem Steel Co. v Turner Constr. Co., 2 NY2d 456, 460 [citations omitted]).
The parties had no difficulty in elucidating the duty to pay postverdict interest over the limit in a separate section of the insurance policy. It follows that if they had agreed to have Columbia pay preverdict interest in addition to the policy limits, they would have so provided.
An agreement to pay any sums over the policy limit is an important undertaking, and, as this case illustrates, can involve significant sums of money. It would be anticipated that a matter of this import would be documented in the insurance policy just as the provision for postverdict interest was included. In the absence of such a provision, the court does not find an obligation to pay preverdict interest.
The established common law of New York does not, as Monarch contends, hold that an insurance company is responsible for the payment of preverdict interest. The several cases cited by Monarch deal with postjudgment interest which is not in issue in this case.
Monarch most heavily relies upon Agriculver Profit Sharing Plan v Dryden Mut. Ins. Co. (145 AD2d 811 [3d Dept 1988]) to substantiate its position. In Agriculver the plaintiff mortgagee obtained summary judgment against the defendant insurance company on a fire policy. The fire policy included a standard mortgagee clause which insured the plaintiff "as its interest may appear”. The appellate court, in deciding the issue of the amount due to the plaintiff, determined the plaintiff was entitled to the unpaid principal, plus interest at the mortgage rate to the date of judgment, legal fees and a portion of the contingency fee.[1] The right to these items arose specifically from the agreements involved. It was the mortgage, bond and insurance policy that provided the basis for the payment of prejudgment interest. The court stated at page 813, "Indeed, plaintiff is insured under the policy 'as [its] interests may appear’, which include, in addition to the principal and interest due, other amounts secured by the mortgage (citation omitted).”
The prejudgment interest paid in addition to policy limits was by virtue of the language in the mortgage and policy; *103 Agriculver (supra) and the cases cited by Monarch do not establish a common-law duty upon an insurance company to pay preverdict interest irrespective of the policy limits.
The cases cited by Columbia as establishing preverdict interest to be part of damages subject to policy limits also fall short of the mark. The cases cited, Cleghorn v Ocean Acc. & Guar. Corp. (244 NY 166 [1926]) and Matter of Russo v Kemper Group (146 AD2d 701 [2d Dept 1989]), are wrongful death cases which are governed by EPTL 5-4.3. That section of the EPTL provides in pertinent part "Interest upon the principal sum recovered by the plaintiff from the date of the decedent’s death shall be added to and be a part of the total sum awarded.” Preverdict interest under the wrongful death statute (EPTL 5-4.3) constitutes part of the "damages” allowed because of the uniquely and exclusively "pecuniary” nature of the wrongful death remedy in New York. (See, Milbrandt v A.P. Green Refractories Co., 79 NY2d 26, 35-36 [1992].)
No cases have emerged that determine the issue raised herein or set a precedent for the court to follow.
As indicated above, however, the policy does not provide coverage for the payment of preverdict interest in excess of the $1,000,000 limit of liability.
The court finding that Columbia has no obligation to pay preverdict interest, the first and second causes of action fail. As to the third cause of action the court does not agree that the pretrial settlement payment is to be applied first to the jury verdict. Under Massachusetts law, the settlement payments were applied first to satisfy the interest obligation on the judgment and then to reduce the principal (Boston Edison Co. v Tritsch, 370 Mass 260, 346 NE2d 901). This action to determine the responsibility of the parties for payment of the Massachusetts judgment is controlled by the judgment as computed and entered under Massachusetts law.
The court declares that Columbia has met its obligation (with regard to preverdict interest) under the insurance policy issued to Monarch by paying the policy limit, plus the entire postjudgment interest. As a matter of law, Columbia has not breached its obligations under the insurance policy and the first, second and third causes of action must be dismissed.
DUTY TO NOTIFY EXCESS INSURANCE CARRIER
The second issue raised by the motions is whether Columbia breached an obligation under the policy with Monarch and *104 the law of New York in not notifying Monarch or its excess carrier of the potential for a judgment in excess of Columbia’s $1,000,000 policy limit.
Columbia maintains that it has no duty to notify Monarch or its excess carrier, and furthermore, that if there were such a duty, any alleged breach by Columbia was not the cause of Monarch’s loss of excess coverage. Columbia comes to this conclusion based upon the decision rendered in the lawsuit of Monarch against Allianz.[2] On summary judgment motions in that action, the Federal District Court found that (1) Allianz’s disclaimer of liability was timely; (2) there was a question of fact as to whether Monarch should have reasonably recognized that it would be liable in excess of the coverage provided by the Columbia policy up until the time the verdict was rendered; and (3) by waiting more than 100 days after the jury’s verdict to notify Allianz of its intention to assert coverage under the excess policy, Monarch discharged Allianz of any duty it had to provide coverage under such policy.
The question in this lawsuit is not whether Monarch should have recognized the possibility of excess liability, but whether Columbia should have informed Monarch or its excess carrier of its vulnerability to liability for an excess verdict.
Granted, there is no specific provision requiring such notification. There are however, and Columbia acknowledges, duties that can be implied into a contractual relationship between an insured and the primary insurer.
"It is the duty of the insurer in conducting the defense on behalf of the insured to act impeccably, in good faith and in a careful and prudent manner and to conduct the whole defense and protect the insured as well as itself, against liability at all stages of the litigation, giving to the insured its undivided support, and, in that respect, the insurer acts as the agent of the insured.” (70 NY Jur 2d, Insurance, § 1683.)
Columbia undertook the defense of Monarch and it retained Casner, Edwards & Roseman (Casner) as counsel to represent Monarch. Casner requested and was provided with information on Monarch’s liability insurance which included information on the Allianz policy. At no time did Columbia or Casner advise, suggest or inform Monarch of the wisdom of alerting its excess carrier that coverage might be sought under that policy. Nor did they indicate that the Columbia policy might *105 not cover the judgment, or that Monarch could be liable for interest and costs.
No New York cases have been cited holding that a primary insurer owes a duty to the insured to notify the excess insurer when the potential liability exceeds the primary policy limits. New York State recognizes, however, that a primary insurer owes duties directly to an excess insurer (see, Hartford Acc. & Indent. Co. v Michigan Mut. Ins. Co., 61 NY2d 569, 574). In Russo v Rochford (123 Misc 2d 55, 57) the court aptly pointed out that duties owed by a primary insurer to an excess insurer, pursuant to either equitable subrogation or a direct duty, are "derived from the duty owed [by the primary insurer to] the insured, one of those duties being the distinctly recognized contractual duty to defend with care.”
Some guidance on the issue is also derived from the principles recognized by the insurance industry itself in the Guiding Principles for Insurers of Primary and Excess Coverage[3] (Principles). The Principles require a primary insurer to notify an excess insurer of potential excess liability.[4]
Columbia states it is not a signatory to the Principles and even if it were, Columbia could not be held liable for failing to follow a policy which it has adopted voluntarily. (See, Sherman v Robinson, 80 NY2d 483, 489, n 3.) The court accepts that position, but employs the Principles as an indication of a practice or a goal of the insurance industry.
*106 The court finds there is an obligation on the primary carrier to give timely notice to the excess carrier, when known, and the insured of the potential for an excess verdict or liability over the primary policy limits. This obligation springs from and is implied from the basic contractual duty to defend with care. That duty is imposed throughout the lawsuit. In keeping with that duty the necessity to apprise the excess carrier of the possibility of "picking up the ball” is a prudent initial consideration, or it should be. The obligation to notify the excess carrier and insured of financial consequences for which there is no primary coverage is clearly a component part of "a careful defense”.
Columbia and the attorneys it retained to defend Monarch were in the best position to evaluate the case from the initial stages of the action to the verdict. Either through the actual representation or through monitoring, they controlled the defense, had a firsthand view of the case as it developed, and were knowledgeable of Massachusetts law and practice.
In assessing Columbia’s duty to notify, it is significant that it had knowledge of the following facts. Columbia knew that the complaint sought damages for $1,000,000, plus interest and costs; that Simmons suffered serious, catastrophic injuries that were largely undisputed; that a jury verdict in a similar case in Middlesex County was rendered in an amount in excess of $1,000,000; and that Monarch had an excess coverage policy with Allianz.
In spite of the facts known to it, at no time before the verdict did Columbia indicate to Monarch or Allianz that the Columbia coverage might well be exhausted. The failure to carry out this fundamental duty deprived Monarch of the excess coverage to which it was entitled; a coverage that it purchased specifically to protect its interests in instances such as this. Had Columbia merely notified Allianz that its policy might be involved, the defense later asserted by Allianz that stripped Monarch of excess coverage would have been unavailable. Monarch would have received the protection of the excess policy.
The court notes that in the context of business and the insurance industry, this is not an onerous or unusual obligation; the burden on the primary carrier of notification to the excess carrier or the insured is minimal compared to the consequences to the insured where no notice is received.
Columbia, having knowledge of the umbrella policy with *107 Allianz, had a duty to give timely notice to Allianz and Monarch of the potential for excess liability that would invoke the excess policy. That duty arose when it could reasonably conclude that Columbia’s policy limit would not cover all the damages and costs involved. Under the facts, that time was before the verdict was rendered. The failure to give notice resulted in damages to Monarch in the amount it had to pay Simmons equal to the excess judgment over and above Columbia’s primary policy limits, plus interest.
Monarch’s motion for summary judgment on the fourth cause of action is granted.
Columbia’s motion for summary judgment on the fourth cause of action is denied.

. The amount of the contingency payment to be recovered was restricted by the limits of liability of the policy.

. Monarch Mach. Tool Co. v Allianz Underwriters Ins. Co., US Dist Ct, ND NY, Apr. 29, 1993, Scullin, J.

. The Guiding Principles, enacted in 1974, were promulgated by the Claims Executives Counsel, composed of the American Insurance Association, the American Mutual Insurance Alliance, and eight unaffiliated companies, in an attempt to reduce the incidents of controversy between primary and excess insurers. (Marick, Excess Insurance: An Overview of General Principles and Current Issues, 24 Tort & Ins LJ 715, 738-739 [1989].)

. Principle 5 states:
"If at any time, it should reasonably appear that the insured may be exposed beyond the primary limit, the primary insurer shall give prompt written notice to the excess insurer, when known, stating the results of investigation and negotiation, and giving any other information deemed relevant to a determination of the exposure, and inviting the excess insurer to participate in a common effort to dispose of the claim.”
Principle 6 states:
"Where the assessment of damages, considered alone, would reasonably support payment of a demand within the primary policy limit but the primary insurer is unwilling to pay the demand because of its opinion that liability either does not exist or is questionable and the primary insurer recognizes the possibility of a verdict in excess of its policy limit, it shall give notice of its position to the excess insurer when known. It shall make available its file to the excess insurer for examination, if requested.”