SUPERIOR COURT 
 
 LEO BERTOLINO, AS TRUSTEE FOR LEO P. BERTOLINO TRUST, AND OTHERS v. TERENCE FRACASSA AND FREDERICK MCDONALD

 
 Docket:
 1784CV04210-BLS2
 
 
 Dates:
 June 13, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER AS TO FORM OF JUDGMENT AFTER VERDICT ON CLAIMS BY TERENCE FRACASSA AND COMMONWEALTH PAIN MANAGEMENT CONNECTION, LLC
 
 

 The last unresolved claims in this case, which were asserted by Terence Fracassa and Commonwealth Pain Management Connection, LLC (“CPMC”) against John McLaughlin and Richard Vitale, were tried last month. The jury found that McLaughlin is liable to CPMC, on theories of conversion of property and aiding and abetting breach of fiduciary duty, in the amount of $5,123,937.74 for participating in the unauthorized transfer of funds out of CPMC’s bank account. It also found that McLaughlin is liable to Fracassa in the amount of $2,200,000 for interfering with Fracassa’s contractual right to indemnification by CPMC. Finally, the jury found that Vitale is not liable to Fracassa for tortious interference.
The Court finds that the two damage amounts awarded by the jury against McLaughlin are duplicative, and that the amount awarded to CPMC must be reduced by the $2.2 million awarded to Fracassa.
It also finds that (I) the entire $2,362,500 that Burns & Levinson LLP (“B&L”) previously paid to Fracassa to settle his breach of fiduciary duty claim must be set off against and thus reduce the amount that the jury awarded to Fracassa, and (ii) $399,587 from the settlement amount that B&L paid to CPMC must be set off against the net damages that the jury awarded to CPMC.1
 
--------------------------------------------
 
[1] After their settlement, Fracassa, CPMC, Burns & Levinson, LLP and its partners Frank A. Segall and Scott H. Moskol voluntarily dismissed with prejudice their claims against each other. Separate and final judgment as to those claims was entered in April 2022. The other claims in this case were resolved as follows:
* Judge Sanders ordered the dismissal of Fracassa’s counterclaims for conversion and money had and received against the Leo P. Bertolino Trust and the other plaintiffs in August 2019.
            <continued…>
 
                                                            -1-
 
1. No Reply Brief. Counsel for Fracassa and CPMC submitted a letter yesterday announcing that they planned to file a reply brief on these issues.
The Court will treat this letter as a motion or request for leave to submit a reply memorandum. In the exercise of its discretion, the Court denies that request.
Immediately after the jury announced its verdict, the Court told trial counsel that it wanted both sides to submit briefing on the proper form of judgment, including whether the damage awards to CPMC and Fracassa were duplicative and whether CPMC and Fracassa were entitled to recover any taxable costs. The next day the Court clarified in writing that the parties’ submissions should also address the issue of how much of the settlement amount that has been paid to resolve claims against other defendants must be set off against the verdict that the jury rendered against Mr. McLaughlin.
The Court gave CPMC and Fracassa until May 21 to submit their memorandum on these issues, and ordered the McLaughlin file his response by May 31. At
 
--------------------------------------------
 
* Frederick McDonald voluntarily dismissed with prejudice his claims against Kettle Black of MA, LLC, in November 2019.
* Fracassa voluntarily dismissed without prejudice his claims against Robert Quinn in December 2019.
* At about the same time, Judge Sanders ordered the dismissal of Fracassa’s claim for conversion against Kettle Black.
* Two of the plaintiffs, John DiRico and JEJC, LLC, voluntarily dismissed with prejudice their claims against Fracassa and McDonald in 2020.
* The remaining Plaintiffs’ claims against Fracassa and McDonald under the Massachusetts Uniform Securities Act were tried in April 2021 without a jury. The Court found that Fracassa was not liable under MUSA, but that McDonald was liable in an amount totaling $2,217,922.20. In April 2023, Fracassa dismissed without prejudice his claim for contribution against Kettle Black of MA, LLC. Fracassa’s claims for contribution against plaintiff Edward Hanrahan and the third-party defendants sued by Fracassa are moot because Fracassa was found not to be liable to the Plaintiffs. After further negotiations and an apparent settlement, in April 2024 Plaintiffs dismissed with prejudice their MSUA claim against McDonald, who in turn dismissed with prejudice his claims against McLaughlin and Vitale.
* Just before the recent, second trial, CPMC voluntarily dismissed with prejudice its claims against McLaughlin and Vital under G.L. c. 93A, § 11, and for tortious interference of CPMC’s business relationship with Wellness Connection of MA, Inc.
 
                                                            -2-
 
the parties’ joint request, the Court then extended these deadlines. When the Court discussed this briefing schedule with counsel, CPMC and Fracassa did not seek leave to submit a reply brief.
The Court deliberately did not authorize CPMC and Fracassa to file any reply memorandum. And there is no need for one. CPMC and Fracassa submitted a thorough, 16-page memorandum that addressed all issues regarding whether the jury awarded duplicative damages and to what extent the third-party settlement payment should be set off against the jury’s damage award concerning McLaughlin’s liability.[2] The Court does not need additional briefing in order to fairly decide these issues.
2. Proper Judgment Before any Setoff. The Court finds that the damages awarded by the jury to CPMC and the damages that it awarded to Fracassa are duplicative. “Where the same acts cause the same injury under more than one theory, duplicative damage recoveries will not be permitted.” Szalla v. Locke, 421 Mass. 448, 454 (1995).
CPMC and Fracassa both claimed that they were harmed because money was unlawfully taken from CPMC, and that McLaughlin was liable because he knowingly participated in the improper transfer of CPMC’s funds. It was undisputed at trial that: Kettle Black of MA, LLC, had invested about $8 million in CPMC; in December 2016 Fredrick McDonald, who was a manager of CPMC and the sole manager of Kettle Black, transferred just over $5.3 million out of CPMC’s bank account and into Kettle Black’s account; and in early 2017 McDonald transferred at total of $200,000 back to CPMC.[3]
The claims by CPMC and Fracassa all turned on whether McLaughlin could be held responsible for injury that allegedly was caused by McDonald’s transfer of CPMC’s funds to Kettle Black.
The Court instructed the jury that:
o McLaughlin was liable to CPMC for conversion if he intentionally participated with McDonald in taking money from CPMC without
 
--------------------------------------------
 
[2] Fracassa and CPMC were expressly given the opportunity to request taxable costs, and a deadline for making any such request. They opted not to do so.
[3]  McDonald also transferred another $500,000 from Kettle Black’s account back  to CPMC, but then reversed the transaction and once again put that money into Kettle Black’s account.
 
                                                            -3-
 
Fracassa’s consent or agreement, which was required under the CPMC operating agreement, and CPMC suffered harm as a result;
o McLaughlin was liable to CPMC for aiding and abetting a breach of fiduciary duty if (I) McDonald breached his duty of care or loyalty to CPMC by taking away its money without Fracassa’s agreement or consent, (ii) McLaughlin knew that McDonald was breaching his duty of care or loyalty to CPMC, (iii) McLaughlin actively participated in or substantially assisted that breach, and (iv) CPMC suffered harm as a result; and
o McLaughlin was liable to Fracassa for tortious interference if (I) he knowingly interfered with Fracassa’s contractual right to be indemnified by CPMC for the legal expenses that he incurred in defending himself against claims by the Kettle Black investors, (ii) McLaughlin had an improper motive or used improper means to interfere with Fracassa’s indemnification rights, and (iii) Fracassa suffered a foreseeable injury as a result.
Fracassa’s theory at trial was that McLaughlin committed tortious interference by participating in McDonald’s transfer of CPMC’s funds, and that when McLaughlin did so he both knew and intended that taking away CPMC’s remaining money would prevent it from satisfying its contractual obligation to indemnify Fracassa. By its verdict against McLaughlin on the interference claim, the jury agreed. It awarded Fracassa the full amount of compensation, $2.2 million, that he sought on this claim.
Given the evidence presented and Fracassa’s theory of the case, the award to CPMC of the money that was taken from it necessarily includes the damages sought by and awarded to Fracassa. If McDonald had not taken CPMC’s money, then Fracassa would have suffered no injury because CPMC would have been able fully to indemnify him. As McLaughlin aptly notes: “Fracassa’s $2.2 million in damages are a subset of the $5.1 million [awarded] to CPMC. Had the funds not been transferred, he would have no claim.”
In its memorandum as to the proper form of judgment, CPMC and Fracassa make the conclusory assertion that the damage awards are not duplicative because it would “incorrect” to assume “that given CPMC[‘s] present circumstances, CPMC would or could use” the damages awarded to it by the jury “to indemnify Fracassa.”
 
                                                            -4-
 
This argument, which is not unsupported by any evidence, is unavailing because it is inconsistent with the theory on which CPMC and Fracassa tried their claims against McLaughlin. “A party may not present one theory of proof at trial and then desert that theory for a different one on appeal,” or in making arguments about whether different damage awards are duplicative. See Carrel v. National Cord & Braid Co., 447 Mass. 431, 443 (2006), quoting Boston Housing Auth. v. Bruno, 58 Mass. App. Ct. 486, 491 (2003). For example, a party may not challenge a jury’s award of damages based on new theory that differs from theory on which case  was  tried.  See  DeRose  v.  Putnam  Management  Co., 398 Mass. 205, 212 (1986).
Having convinced the jury that CPMC would have indemnified him in full if McDonald had not taken its remaining funds, and that McLaughlin committed tortious interference by participating with McDonald in preventing CPMC from doing so, Fracassa cannot now argue that the two damage awards are not duplicative because there is no way to know whether CPMC (which Fracassa controls) will decide to indemnify Fracassa if it recovers on its damage award against McLaughlin.
The Court has also considered the other arguments by CPMC and Fracassa that the damage awards are not duplicative. Those arguments have no merit. In sum, to avoid the awarding of duplicative damages, the $5,123,937.74 that the jury awarded to CPMC must be reduced by the $2.2 million that it awarded to Fracassa, leaving a net recoverable amount (before the setoffs discussed below) of $2,923,937.74.
3. Proper Judgment After Setoff. The Court further finds that McLaughlin is entitled to set off most of the settlement payment that the Burns & Levinson parties made to Fracassa and CPMC against the jury’s damage awards.
3.1. Factual Background. Fracassa asserted a third-party claim against Burns & Levinson for breach of fiduciary duty on April 11, 2019. Fracassa claimed that B&L’s alleged misconduct caused him to suffer damage “including but not limited to the loss of value of [his] investment in CPMC and attorneys’ fees incurred defending against” the Plaintiffs’ claims.
CPMC asserted its own counterclaims against B&L, as well as claims against two B&L partners, on October 17, 2019. CPMC sued these parties for legal malpractice and breach of fiduciary duty; it sued B&L but not its partners for violating G.L. c. 93A. CPMC sought to hold these parties liable for its loss of
 
                                                            -5-
 
the $5.3 million that was transferred by McDonald, and for profits that CPMC allegedly missed out on due to the loss of its business opportunity with Wellness Connection of MA, Inc. CPMC also sought to recover all legal fees that it had paid to B&L.
CPMC represents that it had paid B&L $387,913 in fees. McLaughlin has had the opportunity to review unredacted copies of all legal bills from B&L to CPMC, after the Court ordered that they be produced. He does not dispute this representation. The Court therefore finds that it is accurate.
The B&L parties settled the claims against them by Fracassa and CPMC on February 8, 2022. The B&L parties paid a total of $3.15 million. The settling parties allocated 75 percent of that amount (of $2,362,500) to settling Fracassa’s claim and the remaining 25 percent ($787,500) to settling CPMC’s claims.
The settlement agreement does not further allocate these amounts to or among any particular parts of the damages claims by Fracassa or CPMC. Instead, it provides that the entire settlement agreement and required payment constituted an accord and satisfaction of “all claims alleged or that could have been alleged” by Fracassa and CPMC in this lawsuit.
3.2. Legal Standards. By statute, “amounts received in settlement from a joint tortfeasor ‘shall reduce the claim against the others to the extent’ of the value of the settlement amount received.” Scannel v. Ed. Ferreirinha & Irmao, LDA, 401 Mass. 155, 165 (1987), quoting G.L. c. 231B, § 4(a). This statute embodies the common-law rule that “an injured party is entitled to only one satisfaction for each injury.” Short v. Marinas USA Ltd. Partnership, 78 Mass. App. Ct. 848, 858 (2011), quoting Harris v. Union Elec. Co., 846 F.2d 482, 485 (8th Cir. 1988).
“[C]ontribution is appropriate between persons who are liable jointly in tort for the same injuries, even if they are liable on different theories of tort liability.” Wolfe v. Ford Motor Co., 386 Mass. 95, 100 (1982). It follows that setoff of prior settlement amounts paid by other parties alleged to be “liable in tort for the same injury,” see G.L. c. 231B, § 4(a), is appropriate even if the settling party was accused on different theories of liability.
McLaughlin is therefore entitled to set off, against the damages awarded by the jury, any settlement amount paid by another party to CPMC or Fracassa “on account of the same injury” that was caused by McLaughlin. See Custom Kits Co., Inc. v. Tessier, 97 Mass. App. Ct. 385, 388–389 (2020), quoting Tritsch v. Boston Edison Co., 363 Mass. 179, 182 (1973).
 
                                                            -6-
 
Where the settling parties have not allocated a settlement amount among different kinds of injury, a judge has the discretion to do so in order to decide what portion of a prior settlement payment should be set off against particular damage awards at trial. See Thayer v. Pittsburgh-Corning Corp., 45 Mass. App. Ct. 435, 440–441, rev. denied, 428 Mass. 1109 (1998)
3.3. Analysis of Setoff Issues.
3.3.1. Setoff as to Fracassa’s Damages. With respect to the jury’s $2.2 million damage award to Fracassa, the Court finds that McLaughlin is entitled—after accounting for prejudgment interest—to set off the full amount of B&L’s $2,362,500 settlement payment to Fracassa.
Fracassa concedes that three-fourths of his share of the B&L settlement payment was to compensate him for CPMC’s inability fully to indemnify him because its funds were transferred to Kettle Black, and asks the Court to set off that portion of his settlement payment against the jury award.
Although Fracassa contends that the one-quarter of his settlement payment was to compensate him for “lost economic benefits and reputational harm,” and therefore should not be set off, he points to no evidence to support this assertion.
This Court was the trial judge for both trials in this case. Based on the evidence presented during these trials, the Court finds that B&L’s alleged misconduct (I) was not a but-for cause of the collapse of CPMC’s deal with Wellness, and thus not a cause of any consequential damage to Fracassa, and (ii) was probably not a cause of any reputational damage to Fracassa.
It further finds that B&L and Fracassa most likely understood this when they entered into their settlement agreement, and that therefore no portion of B&L’s settlement payment to Fracassa should be allocated to alleged economic or reputational damage.
In other words, the Court finds that the full amount of the settlement payment to Fracassa was to compensate him for the same injury for which the jury awarded damages in this case, plus part of the prejudgment interest that had accrued by the time of the B&L settlement.
McLaughlin is therefore entitled to set off the entire amount of B&L’s settlement payment to Fracassa. The calculation of how that should happen, while properly accounting for the accrual of prejudgment interest, is as follows.
 
                                                            -8-
 
The parties agree that Fracassa is entitled to prejudgment interest on the full $2.2 million that the jury awarded him from the date he filed his claim against McLaughlin (April 11, 2019) until the date that he settled his claim against B&L (February 8, 2022), a period of 1,034 days.4 That amounts to $747,879.45 in prejudgment interest, for a total of $2,947,879.45 due as of that date.
McLaughlin is entitled to set off the full settlement that B&L paid to Fracassa, which was $2,362,500.
After subtracting that amount, Fracassa is entitled to a judgment against McLaughlin in the amount of $585,379.45, plus further prejudgment interest running from February 8, 2022, until judgment enters.
3.3.2. Setoff as to CPMC’s Damages. With respect to the non-duplicative portion of the jury’s award to CPMC, the Court finds that McLaughlin is entitled to set off just over half of the B&L parties’ $787,500 settlement payment to CPMC.
The Court finds that $387,913 of the that settlement payment should be allocated to recovery of the legal fees that CPMC had paid to B&L. That is because the Court finds that this amount is not in dispute, and CPMC would have been entitled to recover this amount if it had prevailed at trial against the B&L parties. The Court finds that this portion of the settlement payment was undoubtedly to reimburse CPMC for these legal fees.
In addition, the Court finds that McLaughlin is entitled to set off the remaining $399,587 of the settlement payment to CPMC, because that part of the payment should be allocated as partial compensation for B&L’s alleged participation in McDonald’s transfer of funds out of CPMC’s bank account. There was evidence at trial, and the Court credits McLaughlin’s showing that there was additional evidence produced during discovery, that McDonald conferred with B&L attorneys about whether he could transfer CPMC’s money to Kettle Black and that they told him to go ahead. As discussed above, the theory that B&L caused CPMC to suffer lost profits was far more speculative than the theory that B&L shared liability for the unauthorized transfer of CPMC’s funds. In sum, the Court finds that the balance of this settlement payment was to compensate CPMC for the same injury as the jury’s award of damages to CPMC.
 
--------------------------------------------
 
[4]        See Boston Edison Co. v. Tritsch, 370 Mass. 260, 264–267 (1976); Harvey v. Essex Bancorp, Inc., 25 Mass. App. Ct. 323, 326 (1988).
                                                            -8-
 
McLaughlin is therefore entitled to set off $399,587 of B&L’s settlement payment to CPMC. The calculation of how that should happen, while properly accounting for the accrual of prejudgment interest, is as follows.
CPMC is entitled to prejudgment interest on the non-duplicative portion of the damages awarded by the jury, which (as discussed above) is $2,923,937.74, from the date that CPMC filed its claim against McLaughlin (October 17, 2019) until the date that CPMC settled its claims against the B&L parties (February 8, 2022), a period of 845 days. That amounts to $812,293.94 in prejudgment interest, for a total of $3,736,231.68 due as of that date.
As discussed above, McLaughlin is entitled to set off $399,587 of the settlement amount that B&L paid to CPMC.
After subtracting that amount, CPMC is entitled to a judgment against McLaughlin in the amount of $3,336,644.68, plus further prejudgment interest running from February 8, 2022, until judgment enters.
ORDER
Final judgment shall enter providing that:
(1) John McLaughlin must pay Commonwealth Pain Management Connection, LLC, $3,336,644.68 plus further prejudgment interest running from February 8, 2022.
(2) John McLaughlin must pay Terence Fracassa $585,379.45 plus further prejudgment interest running from February 8, 2022.
(3) Terence Fracassa shall take nothing on his claim against Richard Vitale for tortious interference.
(4) The claims by Terence Fracassa against Robert Quinn are dismissed without prejudice, by agreement.
(5) All other remaining claims are hereby dismissed with prejudice.